## Queen *v.* Dayton Coal & Iron Co.

### (*Knoxville.*   October 17,   1895.)

1. NEGLIGENCE.   *Employment of infant contrary to statutes constitutes.*

   The employment of an infant in a mine in violation of the statute forbidding such employment and declaring it a misdemeanor, constitutes *per se* such negligence as renders the employer liable for all injuries sustained by the infant in the course of the employment.   (*Post, pp. 461–464.*)

   Act construed: Acts 1881, Ch. 170.

   Cases cited and approved: 131 N. Y., 90; 78 N. Y., —.

2. SAME.   *Same.*

   But such illegal employment of an infant does not *per se* constitute gross negligence.   (*Post, p. 466.*)

3. CONTRIBUTORY NEGLIGENCE.   *Available in defense of infant's suit.*
   Contributory negligence is available in defense of an infant's suit for injuries sustained while employed in a mine contrary to statute, but the Court should explain fully to the jury the degree of care required of infants.   (*Post, pp. 464–466.*)

---

### FROM   RHEA.

---

Appeal in error from Circuit Court of Rhea County.   JAS. G. PARKS, Judge.

GIVENS & LOCKE for Queen.

BEERKETT, MANSFIELD & MILLER for Dayton Coal & Iron Company.

McALISTER, J.   This suit was commenced in the Circuit Court of Rhea County by the plaintiff in error, a minor suing by his next friend, against the defendant company, to recover damages for personal injuries.

The record discloses that the plaintiff in error, a boy about ten years of age, was employed by the defendant company to work in its mines in the capacity of a trapper.   His duties were to open and close the gates for the cars to pass through, and, in addition, to keep the track between the two gates clear of coal and slate.   The plaintiff testified "that, at the time of his employment, he was told by the superintendent to mind the car driver, and do whatever he told me; that on the day of the injury Jim Carter was car driver, and was coming on his last trip with empty cars, and he told me to prop open the gates and go with him to the headway of the entry and hold his mule while he got out the loaded cars.   I did as he told me, and, after he got the loaded car, he told me to get on the car, which I done, and he then started on the return trip.   When he got to the gate, on his way to the main line, he told me to jump off.   But this I refused to do, and asked him to stop the car, but after he told me several times to jump off, I did so, and fell under the wheels of the car, which

crushed my right leg and knee." He further states
he had been in the habit of riding on the cars a
greater part of the time, but the driver, prior to
•this trip, always stopped for him to get off.

The superintendent of the company denied that
he had placed the boy under the orders of the car
driver, and stated that he had repeatedly forbidden
the plaintiff in error to ride on the cars. The
theory of the company was, that at the time of
the accident the boy was attempting to get on the
car, but his· foot missed the bumpers, and was
caught beneath the car. It was claimed by the
company that the boy frequently boarded the car,
and had been repeatedly warned of the danger, but
that he persisted in violating the rules of the com-
pany. The cause was tried by the Circuit Judge and
a jury, resulting in a verdict and judgment in favor
of the defendant company. The plaintiff appealed,
and has assigned errors.

The Act of 1881, entitled "An Act to provide
for the ventilation of coal mines and collieries, and
the protection of human life therein," provides, in
the tenth section, viz.: "And no boy under twelve
years of age shall work or enter any mine, and
proof must be given of his age, by certificate or
otherwise, before he shall be employed; and no fa-
ther or other person shall conceal or misrepresent
the age of any boy knowingly." A violation of
the Act is then declared a misdemeanor, punishable

by fine or imprisonment, or both, at the discretion of the Court trying the same.

The record discloses that, at the time of his employment, the plaintiff in error was a boy only ten years of age. The superintendent states that, at the time he hired him, he did not know his age, and did not inquire; that he did not demand from him or anyone else a certificate of his age, and did not receive one. He claims, however, that he hired the boy at the request of his mother, who called to see him frequently on the subject. As applicable to this state of facts, counsel for plaintiff in error requested the Court to charge as follows: "I instruct you that the laws of the State of Tennessee prohibit the employment of any child under twelve years of age in any mine in this State, and any such employment by the defendant company would be gross negligence."

The Circuit Judge refused the instruction, and, in lieu thereof, submitted the following remarks to the jury, viz.: "I instruct you that the statute in question has no application to the facts of this case. It makes it a misdemeanor to employ a child under twelve years of age, and, if defendant did so, it would be guilty of a misdemeanor, and liable to be punished therefor, but the statute does not provide that one failing to comply with its provisions shall answer civilly for all damages that may result to any such child in its employment; hence, it does not apply to the facts of this case. Neither does

it appear that the statute prohibits anything in or about which plaintiff was injured. If it did, and defendant disobeyed it, and, as a consequence thereof, plaintiff was injured, then such failure to obey might be actionable negligence, but such *are not the facts of this case.''

The refusal of the Court to give the instruction asked, and the remarks made in refusing it, constitute the basis of the principal assignment of error. The question presented is one of first impression in this State, but it has been frequently adjudged in other States, and is well settled upon principle. It is laid down in Comyn's Digest ''that, in every case where a statute enacts or prohibits a thing for the benefit of a person, he shall have a remedy upon the same statute for the thing enacted for his advantage or for the recompense of a wrong done to him contrary to the said law.'' Mr. Francis Wharton, the eminent text-writer, in his work on Negligence, Sec. 443, states the rule thus: ''Where a statute requires an act to be done, or abstained from, by one person for the benefit of another, then an action lies, in the latter's favor, against the former for neglect in such act or abstenance, even though the statute gives no special remedy. Thus, in an action against a public officer for neglect, whereby the plaintiff was injured, it is no defense that the defendant contracted not with the plaintiff, but with the government, the action being founded not on contract, but on breach of duty. Even the

imposition of a penalty by the statute does not oust the remedy by indictment nor *a fortiori* by suit for negligence, unless the penalty be given to the party injured in satisfaction for injury."

Says Mr. Bishop, in his work on Noncontract Law, Sec. 132: "Whenever the common law or a statute imposes on one a duty, if of a sort affecting the public within the principle of the criminal law, a breach of it is indictable, and a civil action will lie in favor of any person who has suffered especially therefrom; or, if the matter of the law involves only the interests of individuals, anyone who has received harm from another's disobedience may have his suit against him for the damages."

This question was considered in *Pauley* v. *Steam Co.*, 131 New York, 90. In that case it appeared that a statute of New York required that fire escapes should be provided on the outside of all factories three or more stories in height. The Act imposed penalties for a disobedience of its provisions. The defendant failed to construct fire escapes on its building as required by the statute. It caught fire, and plaintiff, intestate, was burned to death. The Court said: "I am unable to agree with the contention of appellant that the sole remedy, under the statute, was the public remedy, which consisted of an enforcement of the penalties provided. The requirement of fire escapes was for the direct and special benefit of the operatives in such factories, and intended for their protection, and the rule ap-

plies that when a statute commands or prohibits a thing for the benefit of a person, he shall have a remedy upon the same statute for the thing enacted for his benefit, or for a wrong done him contrary to its terms." See, also, *Willy* v. *Mulledy*, 78 New York.

As another illustration of the rule, it has been repeatedly held that the running of a railroad train within city limits, at a rate of speed prohibited, constitutes negligence *per se*, and gives a right of action to anyone suffering injuries in consequence thereof. Thompson on Negligence, Vol. I., page 506, Sec. 8.

So we think the employment of this minor, in violation of the provision of the statute in question, was an act of negligence on the part of the defendant, and, a causal connection between the employment and the injuries sustained by the boy being shown, a case of liability is made out. Of course we do not hold that if the boy had died of organic disease of the heart, or from a stroke of paralysis, or from some cause wholly disconnected with his employment, the company would have been liable in damages, simply on account of the employment in violation of the statute. But we do hold that the breach of the statute is actionable negligence whenever it is shown that the injuries were sustained in consequence of the employment.

This view of the case does not preclude the defense of contributory negligence on the part of the plaintiff.

Says Mr. Bishop in his work on Noncontract Law, Sec. 140: "It suits the argument in many of the cases for the Judges to look upon disobedience to a legal command as an act of negligence. Thereupon, the doctrine of contributory negligence applies to the plaintiff, precluding his recovery in cases within its rules."

Says Mr. Thompson, Vol. II., page 1175, Sec. 23: "Statutes exacting special precautions on the part of the owners of dangerous machinery are generally construed as not abrogating the ordinary rules of contributory negligence, etc. The effect of such statutes is simply to make the failure to comply with their requirement, negligence *per se*, and not to excuse negligence in other persons. Thus, a statute of Iowa requiring the tumbling rods of threshing machines to be boxed, and providing that the owners of such machines shall be answerable in damages to any person injured by a failure to do so, does not give a right of action where the negligence of the party injured directly contributed to the injury."

Again, it was held, in an English case, that, although a shafting was unfenced, in violation of a statute, yet, if the plaintiff, contrary to the commands of the proprietor, took hold of it, and set it in motion, whereby he was injured, he could not recover damages. *Caswell* v. *Worth*, 5 El. & Bl., 848.

It is hardly necessary to add that contributory negligence on the part of a minor is to be meas-

30—11 P

ured by his age and his ability to discern and appreciate circumstances of danger. He is not chargeable with the same degree of care as an experienced adult, but is only required to exercise such prudence as one of his years may be expected to possess.

We think the charge of the Court is objectionable in not fully explaining to the jury the degree of care which is required of an infant of tender years, but we would not reverse for this reason, since there was no request for additional instructions, and more especially because the assignment of error in respect of this subject is fatally defective.

We are also of opinion that the request submitted by counsel for plaintiff in error in respect of the violation of the statute, was not strictly accurate, in that it assumed that the employment of the boy was gross negligence, which charge would have constituted in itself a basis for the assessment of exemplary damages. A proper request would have made the breach of the statute actionable negligence or negligence *per se.* It appears, however, that the Circuit Judge, in refusing the instruction submitted by counsel, undertook to give an exposition of the statute which we hold to be erroneous, and, for this reason, the judgment is reversed, and the cause is remanded.