Weeks v. McNulty.

101 495
117 477
f117 481

WEEKS v. McNULTY.

(*Knoxville.* November 12, 1898.)

1. INNKEEPER. *Liability to guests.*

An innkeeper is not an insurer of the persons of his guests against injury, but his obligation is merely to exercise reasonable care that his guests may not be injured by anything happening by his negligence. (*Post, p. 499.*)

2. NEGLIGENCE. *Presumption as to origin of fire.*

No presumption of negligence arises against the owner or occupant of a house in which a fire originates. The contrary rule has been pronounced harsh and unreasonable. (*Post, pp. 499, 500.*)

Cases cited: Railroad v. Manchester Mills, 88 Tenn., 659; Deming v. Cotton Press Co., 90 Tenn.. 353; Railroad v. Kelly, 91 Tenn., 699; Postal Tel. Co. v. Zopfi, 93 Tenn., 374.

3. EVIDENCE. *Not pertinent, when.*

Under an averment that a hotel had become unsafe and dangerous by reason of the storing of inflammable substances in the cellar of an adjoining grocery store, evidence is not competent to show that oil and combustible substances were kept in the grocery store on the first floor above the cellar. (*Post, pp. 500, 501.*)

4. SAME. *Answer must be indicated.*

This Court will not reverse the action of the lower Court in refusing to permit a witness to answer a pertinent question, unless the record shows affirmatively that the answer would have been competent and material evidence. (*Post, p. 501.*)

Cases cited: Tel. Co. v. Barnes, 95 Tenn., 271; Holmark v. Molin, 5 Cold., 484; State v. Turner, 6 Bax., 203.

5. SAME. *Entire statement admitted.*

Where plaintiff introduces, as an admission of defendant, a portion of the latter's cross-examination on the trial of another case involving similar issues, it is not error to admit, at plaintiff's instance, his examination in chief relating to the same matters, especially when plaintiff abandons his exception by

Weeks *v.* McNulty.

reading the remainder of the cross-examination in rebuttal. (*Post, pp. 508, 509.*)

6. SAME. *Presumption from failure of party to testify.*

No prejudicial inference can be drawn from a party's failure to testify in his own behalf in a civil case, where it appears that he possessed no special knowledge of the facts of the case. (*Post, pp. 509, 510.*)

Case cited: Dunlap *v.* Haynes, 4 Heis., 476.

7. PROXIMATE CAUSE. *Breach of municipal ordinance.*

The Court finds, as matter of fact, that there is no proof tending to show that the death of plaintiff's husband resulted, proximately, from the absence of fire escapes on the hotel in which he perished, and that, therefore, it is unnecessary to construe the city ordinance in regard to fire escapes, or to determine whether civil liability arises from its breach. (*Post, pp. 501–508.*)

Cases cited: Queen *v.* Coal & Iron Co., 95 Tenn., 458; Deming *v.* Cotton Press Co., 90 Tenn., 353; Railroad *v.* Kelly, 91 Tenn., 699; Postal Tel. Co. *v.* Zopfi, 93 Tenn., 374; Schmalzreid *v.* White, 97 Tenn., 45.

---

FROM KNOX.

---

Appeal in error from Circuit Court of Knox County. JOSEPH W. SNEED, J.

TEMPLETON & CATES for Weeks.

FOWLER, MYNATT & FOWLER and WASHBURN, PICKLE & TURNER for McNulty.

McALISTER, J. Plaintiff brings this suit to recover damages for the death of her husband, Arthur E. Weeks, which is alleged to have been occasioned

by the negligence of the defendants. The grounds of liability alleged in the declaration are, first, that the defendants, at the date aforesaid, were proprietors of Hotel Knox, a public inn in the city of Knoxville, and had negligently permitted said hotel to be in an unsafe and dangerous condition; and, second, that defendants had not employed a sufficient complement of servants for the protection of the hotel and guests; and, third, that the servants employed were incompetent, whereby said hotel was, on April 9, 1897, destroyed by fire, and plaintiff's intestate, Arthur E. Weeks, who was a guest therein, lost his life. The more specific grounds of negligence are stated in the second count of the declaration, viz.: That defendants had failed to provide fire escapes, as ordered by an ordinance of the city of Knoxville, or other reasonable means of escape from said building; that defendants failed to arouse deceased or give him proper warning of said fire, and that this failure was due to defendants' omission in not employing a responsible watchman. It is further alleged that the fire was caused, and said hotel destroyed, by the negligence of defendant in allowing the cellar of his storehouse, which was situated next door to said hotel, to be filled with inflammable material. Defendants pleaded not guilty. The case was tried by a special jury, to whom a large volume of testimony was submitted. The trial resulted in a verdict and judgment for defendants. Plaintiff appealed, and has assigned errors.

17 P—32

The facts necessary to be stated are that the defendant, Frank McNulty, was the owner and proprietor of a public inn in the city of Knoxville, known as Hotel Knox. Plaintiff's intestate, Arthur Weeks, was a traveling man, representing the Rochester Stamping Works and the Robinson Cutlery Company, of Rochester, New York. On the evening of April 7, 1897, said Weeks reached the city of Knoxville, registered at the Hotel Knox, and was assigned to room forty-nine, on the third floor. About 3 o'clock in the morning following Hotel Knox was destroyed by fire, and said Weeks perished in the flames. The fire was first discovered by the night watchman of the hotel, who immediately gave the alarm, ascended the stairway leading to the second and third floors, knocked upon the doors, and made every effort to arouse the guests. It is in proof that the guests were all aroused and escaped, excepting deceased and one other. It is in evidence that one of the guests, as he passed out, heard some one in forty-nine pounding at the door, and noticed that he had kicked out one of the panels. If this evidence is to be credited, it tends to show that deceased heard the alarm, but had, unfortunately, fastened himself in, or, in the excitement, had lost all command of his faculties. It is also shown that parties occupying rooms on the same floor with deceased, immediately contiguous, and across the hall in opposite and diagonal directions, all received the alarm and succeeded in making

their escape. The building was provided with a front and rear stairway, but had no fire escapes. South of the Hotel Knox, and immediately adjoining, was the banking house of the Third National Bank, which being only one story in height, several of the guests leaped upon its roof from the burning hotel building. This mode of escape was accessible to deceased, since his window overlooked the roof; but it is not shown he had knowledge of it.

· The general rule of law governing the liability of an innkeeper is, that he is not an insurer of the person of his guest against injury, but his obligation is merely to exercise reasonable care that his guests may not be injured by anything happening through the innkeeper's negligence. 11 Am. & Eng. Enc. L., p. 32.

"There is no natural presumption," said this Court, "that a fire, the origin of which is unknown, was the result of the want of care of the owner or occupant of the premises. The ancient rule of the common law, which presumed negligence in such cases, was pronounced in the reported cases to be harsh and unreasonable, and was by the statute, 6 Anne, Ch. 31, abrogated. The Courts of this country, whether regarding the statute of Anne as in force or not, have unanimously held that negligence or misconduct was the gist of the action against one upon whose premises a fire had originated, and that such negligence would not be presumed from mere proof of the loss by fire commu-

nicated from the premises of another.'' *Railway Co.* v. *Manchester Mills*, 88 Tenn., 659. It must be shown that the negligence of the innkeeper in this case was the proximate cause of the fire and the consequent injuries. *Deming* v. *Cotton Press Co.*, 90 Tenn., 353; *Railroad* v. *Kelly*, 91 Tenn., 699; *Postal Tel. Co.* v. *Zopfi*, 93 Tenn., 374.

We understand these principles were substantially charged by the Circuit Judge, and the issues of fact have been resolved by the jury in favor of the defendants. We find material evidence in the record to sustain these findings, and, under the rule, the verdict cannot be disturbed on this assignment.

The third assignment is that the Court erred in excluding testimony showing that defendant, McNulty, had stored in the rear of the grocery store, on the ground floor and near the elevator shaft, oils and other combustible materials. Counsel is in error in his statement of the action of the Court. The grocery store, it appears, adjoins the hotel, and is situated just north of it. It was owned by Mc-Nulty, the proprietor of Hotel Knox. The object of this inquiry was to show that defendant had been guilty of negligence in storing oils and other inflammable substances on the ground floor of the grocery store, near the elevator shaft. This testimony was excepted to by defendant, on the ground that no such negligence was alleged in the declaration. The negligence alleged was that defendants had permitted the hotel to be in an unsafe and dangerous

condition, and that they had filled the cellar with inflammable materials, but there was no allegation of negligence in storing oils and other combustible materials in the grocery store, on the floor above the basement. Moreover, it seems defendant was permitted to prove that coal oil was kept in the grocery store, but, when the question was asked, how near the coal oil was kept to the elevator shaft, an objection was interposed by defendants' counsel, which was sustained by the Court. If it be conceded that the action of the Court in sustaining the objection was erroneous, it is not shown in the bill of exceptions what the witness would have answered. It has been frequently held by this Court that the refusal of the trial Court to permit answers to pertinent questions affords no cause for reversal unless the record shows affirmatively that the answers would have been competent and material evidence. *Telegraph Co.* v. *Barnes*, 95 Tenn., 271; *Holmark* v. *Molin*, 5 Cold., 484; *State* v. *Turner*, 6 Bax., 203.

The fourth assignment is that the Court erred in excluding the ordinance of the city of Knoxville, requiring the owners and keepers of hotels to erect fire escapes thereon. The objection offered to this testimony was that the ordinance in question contemplated that notice to erect fire escapes must be given to the owner of the property by the Board of Public Works, and that no such notice was given to the owner and proprietor of Hotel Knox. The declaration, as already observed, alleged that defend-

ant had failed to provide fire escapes for Hotel
Knox, as ordered by an ordinance of the city of
Knoxville. The insistence of counsel for defendant
is that this ordinance contains no absolute require-
ment for the construction of fire escapes, but only
provides that the same may be required by the
Board of Public Works, if, in their judgment, they
are deemed necessary. It is further insisted that,
under the ordinance, the supervision, control, and
direction of everything pertaining to fire escapes,
including the number, locality, strength, capacity,
and mode of structure, is committed to the Board
of Public Works, and that no plans or directions
were ever furnished defendants by said board. It is
insisted, however, that failure to comply with even
an absolute requirement of a municipal ordinance in
the erection of fire escapes will not render the de-
linquent party liable to a civil action for damages
resulting from such neglect, especially where the
ordinance provides a penalty, and does not provide
in its face for the civil liability. It is conceded
that a civil action will lie for an act done in vio-
lation of a prohibitory State law (*Queen* v. *Dayton
Co.*, 95 Tenn., 458), but it is insisted a different
rule prevails when the act is done in violation of a
city ordinance. This precise question was left open
and undecided by this Court in *Schmalzried* v. *White*,
97 Tenn., 45.

It was held in *Osborne* v. *McMasters*, 12 Am.
Rep., 698, where a statute or municipal ordinance

imposes upon any person a specific duty for the protection or benefit of others, if he neglects to perform that duty he is liable to those for whose benefit or protection it was imposed for any injuries of the character which the statute or ordinance was designed to prevent, and which were proximately produced by such neglect.

In *Bolt* v. *Pratt*, 33 Minn., 323 (S. C., 53 Am. Rep., 47), it was held that where a city ordinance, in pursuance of the charter, makes it unlawful to leave a team standing unfastened or unguarded in a street, anyone injured by a violation thereof may maintain an action against the wrongdoer.

In *Salisbury* v. *Herchenroder*, 106 Mass., 458 (S. C., 8 Am. Rep., 354), it appeared that defendant had suspended a sign over a street in Boston, in violation of a public ordinance of the city. During an extraordinary gale, the sign was blown down, and a bolt, part of the fastenings, was hurled against plaintiff's window, causing damage, for which action was brought. Held that defendant was liable, notwithstanding due care was exercised in constructing and fastening the sign. The reason was, that the defendant had placed and kept the sign there illegally, and this illegal act contributed to plaintiff's injury.

In *Hayes* v. *Michigan Central R. R. Co.*, 111 U. S., 228, the action was to recover damages for personal injuries alleged to have been sustained by the plaintiff, a boy eight or nine years old, who

lost his arm by being run over by one of the de-
fendant's cars. The particular negligence charged in
the declaration was the omission of the railroad
company to build a fence on the west line of its
right of way, as required by an ordinance of the
city of Chicago. The Court held that an ordinance
passed in pursuance of legislative authority has the
force of law within the limits of the city, and,
although in case of injury to persons by reason of
the failure of the company to erect such fence, such
default is not conclusive of liability, irrespective of
contributory negligence by plaintiff, yet an action
will lie for the personal injury, and this breach of
duty will be evidence of negligence. "The duty,"
says Mr. Justice Matthews, "is due, not to the
city as a municipal body, but to the public, con-
sidered as comprised of individual persons, and each
person specially injured by the breach of the obliga-
tion is entitled to his individual compensation, and to
an action for its recovery." "The nature of the
duty," said Justice Cooley, in *Taylor* v. *L. S. &
M. S. Ry. Co.*, 45 Mich., 74, "and the benefits to
be accomplished through its performance, must gen-
erally determine whether it is a duty to the public
in part or exclusively, or whether individuals may
claim that it is a duty imposed wholly or in part
for their especial benefit."

We are aware there is a line of cases which hold
that when the duties enjoined by ordinance are due
to the municipality, or to the public at large, and

not as composed of individuals, the rule is different, and an action will not lie for a breach of the ordinance. In many cases of the latter class it was held that the owners of land abutting on streets were liable to the city alone for the breach of ordinances requiring such owners to keep sidewalks clear of snow and ice, and in good repair, and that they were not liable in damages to persons injured by their neglect to perform the duties enjoined by such ordinances. These cases, it is said, proceed upon the ground that it is the sole duty of the city to keep the streets in good repair and clear of snow and ice. See *Flynn* v. *Canton*, 40 Md., 312 (S. C., 17 Am. Rep., 603); *Henry* v. *Sprague*, 11 R. I., 456 (S. C., 23 Am. Rep., 502); *Vandyke* v. *Cin.*, 1 Disney, 532; *Railroad* v. *Ervin*, 89 Pa. St., 71 (S. C., 33 Am. Rep., 726).

An ordinance which a municipal corporation is authorized to make is as binding on all persons within the corporate limits as any statute or other law of the State, and all persons interested are bound to take notice of its existence. *Bolt* v. *Pratt*, 33 Minn., 328 (S. C., 53 Am. Rep., 51); *Heland* v. *City of Lowell*, 3 Allen, 407; *Vandine's case*, 6 Pickering, 187 (S. C., 17 Am. Dec., 357); *Gilmore* v. *Holt*, 4 Pickering, 257; *Johnson* v. *Simonton*, 43 Cal., 242–249.

The duty to erect fire escapes required by this ordinance is not due simply to the municipality, or public at large, but was a regulation designed for

the peculiar benefit and protection of individuals. It is well settled that when a statute commands or prohibits a thing for the benefit of a person, he shall have a remedy upon the same statute for the thing enacted for his benefit, or for a wrong done him contrary to its terms. *Queen* v. *Dayton Coal & Iron Co.*, 95 Tenn., 463; *Paulery* v. *Steam Co.*, 131 N. Y., 90; *Willy* v. *Mulledy*, 78 N. Y., 314 (S. C., 34 Am. Rep., 536).

We do not, however, decide the effect of the breach of an ordinance in fixing civil liability, nor do we adjudicate the proper construction of the ordinance offered in evidence, since neither question is necessarily involved in this case, for the following reason, namely: There is no proof in the record even tending to show that the deceased lost his life in consequence of the failure to construct fire escapes, as provided by the city ordinance. The principle is recognized in all the cases that a liability cannot be predicated alone upon the breach of an ordinance, but it must affirmatively appear that the injury sustained resulted proximately from said breach.

In *Queen* v. *Dayton Coal & Iron Co.*, 95 Tenn., 458, we said: "So, we think, the employment of the minor, in violation of the provisions of the statute in question, was an act of negligence on the part of defendant, and, a causal connection between the employment and the injuries sustained by the boy being shown, there is liability. . . . The breach of the statute is actionable negligence, whenever it is shown

that the injuries were sustained in consequence of the employment. In other words, it is not enough that negligence exists, or that the ordinance was violated, unless it proximately caused the injury. *Deming* v. *Cotton Press Co.*, 90 Tenn., 353; *Railroad* v. *Kelly*, 91 Tenn., 699; *Postal Tel. Co.* v. *Zopfi*, 93 Tenn., 374.

After a very attentive reading of the record in this cause, we have failed to discover any causal connection between the death of plaintiff's intestate and the failure of defendant in error to erect fire escapes, as required by the ordinance. It is not shown that deceased was at a window or in any position where a fire escape would have afforded him any benefit whatever.

There is evidence tending to show that deceased had locked himself in his room and was heard beating on his door, trying to make his escape. It is shown that one of the windows of his room overlooked the Third National Bank building, and that deceased could, with entire safety to himself, have escaped by leaping to the roof of that building, as many others similarly situated successfully did escape. As already stated, it is not shown that deceased knew of this avenue of escape, and we cannot perceive how he would have been benefited by fire escapes, under the circumstances surrounding him. We are, therefore, of opinion that, if the contention of counsel for plaintiff in error in respect of the proper construction of this ordinance were correct, and that

its breach would constitute actionable negligence, these questions are mere abstractions in this case, since no causal connection between the violation of the ordinance and the injuries sustained by the plaintiff is shown.

The fifth assignment is that the Court erred in permitting defendants to read as evidence the stenographer's report of the examination in chief of defendant, John R. Northington, given on the trial of the case of H. L. Crowder against these defendants in the Circuit Court of Knox County. It appears that the case of Crowder against these defendants had been tried only a few days prior to this case, and on that trial John R. Northington was examined as a witness. The questions at issue in the Crowder case were identical with those involved in the present case. The plaintiff's counsel in the present trial read a large portion · of Northington's cross-examination given on the former trial, for the purpose of showing admissions by Northington against his interest. Counsel for defendants then insisted the statements of Northington could not be well understood unless the whole of it was read, and thereupon offered to read the remainder of his evidence. · The Court ruled that defendant's counsel had the right to introduce the whole of the statement where any part of it is offered by the other side, and thereupon defendant read the whole of Northington's examination in chief, and plaintiff read the whole cross-examination, including the portion

her counsel had previously read.   We think, after reading the testimony of Northington, that the cross-examination read by plaintiff's counsel could not be fully understood without reading the examination in chief.   Says Mr. Wood, in his work on Practice and Evidence, Sec. 160: "An important rule relating to the admissions of a party is that the whole statement containing the admission must be taken together, whether the admission is verbal or written; for, although some part of it may contain matter favorable to the party, and the object is only to ascertain what he has conceded against himself, and what may therefore be presumed to be proven, yet, unless the whole is received and considered, the true meaning and import of the part which is good evidence against him cannot be ascertained."   Of course it is not admissible, under this rule, to read matters wholly disconnected and apart from the matter which constitutes the admission, but the whole admission, and anything bearing upon it and explanatory of it, is competent and relevant.   Moreover, it is a conclusive answer to this assignment that plaintiff in error did not stand on the exception made, but read the whole of the cross-examination.

The seventh assignment is that the Court erred in charging the jury that no prejudicial inference could be drawn against defendants in this case from the mere fact that they did not offer themselves as witnesses and testify in this case.   The general rule undoubtedly is that the failure of a party to be

examined, as to matters necessarily within his personal knowledge, affords a presumption against him, where the proof is not clear, and the case he seeks to make could be proven by him if true. *Dunlap* v. *Haynes*, 4 Heis., 476.

It is shown by witness, Hacker, that defendant, McNulty, was examined at the coroner's inquest, and stated that he did not get to the hotel until after the fire, and, hence, knew *nothing* about the matter. It is not shown there were any facts connected with the case peculiarly within his knowledge, and which were not known so fully to any other witness. The condition of the premises, including the elevator shaft, as well as the character and habits of John Davis, the colored night watchman, were fully proved by other witnesses. In respect of M. L. Ross' testimony, this witness was introduced by plaintiff, and does not state anything calling for a denial from defendant.

Numerous assignments are made, all of which have been carefully considered, but we find in them no reversible error.

Affirmed.