MEMPHIS STREET RAILWAY COMPANY *v.* J. J. HAYNES.

*(Jackson.*   April Term, 1904.)

1. **CHARGE OF COURT.** Erroneous definition of negligence
prejudicial to plaintiff only is not reversible error at instance
of defendant.

The court's instruction to the jury defining negligence as the neg-
lect of the use of ordinary care or skill towards a person to
whom the defendant owes the duty of observing ordinary care
and skill by which neglect the plaintiff, *without negligence on
his part proximately contributing to produce the accident,* has
suffered injury to his person, while erroneous, because of the
italicized clause, yet it was not prejudicial to defendant on that
ground, but rather to the plaintiff, and is not reversible error
at the instance of the defendant. (*Post, pp.* 716-717.)

Cases cited and approved:   Burke v. Citizens' Street Railway Co.,
102 Tenn., 409.

2. **SAME.** That, though plaintiff may be negligent, defendant's
negligence renders it liable, contains no error, when.

The court's instruction to the jury that "though the act of a
person in crossing or driving alongside the track in front of a
street railway car which is moving towards him, near enough
to be struck, may be negligence, yet, if the motorman in charge
of the car observed the negligence, or could have observed the
negligence, by the use of ordinary care, when the peril of a
collision became imminent, and might have avoided its effect,
by due care, in time to prevent an accident, and failed to do so,
the company would in that event be liable" contains no error.
(*Post, p.* 717.)

3. **SAME.** That failure to comply with city ordinances is negligence per se, if proximate cause of injury, is correct, when.

The court's instruction to the jury that a failure of a street railway company to comply with city ordinances limiting the speed of cars to fifteen miles per hour and requiring drivers of cars to keep a rigid lookout for all teams, persons, etc., on or moving toward the track, and on the first appearance of danger, to stop the cars in the shortest time and space possible, is negligence *per se*, and will render the company liable, if its negligence was the proximate cause of the accident and injury. (*Post, pp.* 718-722.)

Cases cited and approved: Queen v. Dayton Coal & Iron Co., 95 Tenn., 458; Schmalzried v. White, 97 Tenn., 36; Riden v. Grimm, 97 Tenn., 220; Weeks v. McNulty, 101 Tenn., 495; Memphis Street Railway Co. v. John Williford, Oral Opinion at Jackson, April term, 1903; Bott v. Pratt, 33 Minn., 323; Osborne v. McMasters, 40 Minn., 103; Hayes v. Railroad, 111 U. S., 228; Salisbury v. Herchenroder, 106 Mass., 458.

Cases cited and disapproved. Railroad v. Ervin, 89 Pa., 71; Flynn v. Canton Co., 40 Md., 312; Heeney v. Sprague, 11 R. I., 456; Vandyke v. Cincinnati, 1 Disn. (Ohio), 532.

4. **CITY ORDINANCES.** Requiring street cars to be stopped in shortest time and space possible on first appearance of danger are reasonable and just.

The reasonable and proper construction of a city ordinance requiring street car drivers to keep a rigid lookout for teams, persons, etc., on or moving towards the track, and on the first appearance of danger, to stop the cars in the shortest time and space possible, is that it means when the danger of collision becomes imminent the car shall be stopped; and so construed such ordinance is a reasonable and just one. (*Post, pp.* 718, 722-724.)

Cases cited and approved: Street Railway Co. v. Dan, 102 Tenn., 320-325; Citizens' Street Railway Co. v. Shepherd, 107 Tenn., 444.

Railway v. Haynes.

5. **CHARGE OF COURT.** That failure of street car motorman to apply the brakes was negligence is error.

The court's instruction to the jury that if the motorman on a street car failed, when danger became imminent, to apply the brakes and sound the gong or bell, or give other signal, and use every means in his power to stop the car and prevent the accident, he is guilty of negligence, and if such negligence is the proximate cause of the accident and injury there should be a verdict for plaintiff, is erroneous where the motorman had not applied the brakes, because such instruction was an invasion of the province of the jury, since whether the motorman, in the exercise of ordinary care was required to use any particular appliances to stop the car was for the jury. (*Post, pp.* 724-729.)

6. **CONTRIBUTORY NEGLIGENCE.** Is a fact for the jury, but court may instruct jury that particular conduct is negligence per se, when.

The question of contributory negligence is always one of fact for the jury, but the trial judge may, in a proper case, instruct the jury that such and such conduct on the part of either the plaintiff or defendant would amount to negligence per se, or negligence in law. (*Post, pp.* 730-734.)

Cases cited and approved: Iron Co. v. Smith, 86 Tenn., 45, 48, 49; Telegraph Co. v. Zopfi, 93 Tenn., 369, 372, 373; Stewart v. Nashville, 96 Tenn., 50; Railroad v. Lawson, 101 Tenn., 406; Knoxville v. Cox, 103 Tenn., 368; Wilson v. Railroad, 105 Tenn., 74; Payne v. Railroad, 106 Tenn., 167; Oliver v. Nashville, 106 Tenn., 273, 278-280; Railroad v. Norman, 108 Tenn., 324; Railroad v. Riddick, 110 Tenn., 227.

7. **SAME.** Determined by supreme court; reversal for its existence.

The supreme court will determine whether the facts proved clearly show contributory negligence upon the part of the plaintiff below that acted as a proximate cause to produce the in-

Railway v. Haynes.

jury, and upon ascertaining the existence of such proximate contributory negligence will reverse the judgment. (*Post, pp.* 733-734.)

Cases cited and approved: Light & Power Co. v. Hodges, 1 Cates, 331; Heald v. Wallace, 1 Cates, 346.

**8. SAME. Of plaintiff remotely contributing to the accident makes it the jury's duty to reduce damages.**

Where both the plaintiff and defendant are guilty of negligence but the defendant's negligence was the proximate or contributing cause of the accident, it is the duty of the jury to reduce the damages because of the plaintiff's negligence remotely contributing to the accident, and an instruction to the jury that they may do so is erroneous, because it leaves the matter optional with the jury. (*Post, pp.* 734-736.)

Case cited and approved: Railroad v. Nowlin, (oral).

**9. SAME. Plaintiff's negligence bars his action, where the negligence of both plaintiff and defendant combined was the proximate cause of the accident.**

Where the plaintiff was guilty of negligence which combined with the negligence of the defendant to produce the accident, so that the acts of both together constituted the proximate cause of the injury, then the negligence of the plaintiff, however slight, would bar a recovery; and a refusal to so instruct the jury upon special request is reversible. (*Post, pp.* 736-737.)

Cases cited and approved: Saunders v. Railroad, 99 Tenn., 135; Barr v. Railroad, 105 Tenn., 547; Railroad v. Wilson, 108 Tenn., 618; Railroad v. Norman, 108 Tenn., 331.

**10. CHARGE TO COURT. Special requests embraced in general charge are properly refused.**

Where the matter embraced in the requested instructions is sufficiently covered by the general charge, such requests are properly refused. (*Post, p.* 737.)

FROM SHELBY.

Appeal from the Circuit Court of Shelby County.—
J. P. YOUNG, Judge. ·

WRIGHT, PETERS, & WRIGHT, for Street Railway Co.

JOHNSTON & HIRSH, for Haynes.

MR. JUSTICE NEIL delivered the opinion of the Court.

This action was brought in the circuit court of Shelby
county to recover damages for an injury inflicted upon
the defendant in error by a collision between one of the
plaintiff in error's cars and a wagon on which the de-
fendant in error was at the time riding.   The jury ren-
dered a verdict for $1,100 damages, judgment was ren-
dered thereon, and the railway company thereupon ap-
pealed and assigned errors.

1.   The first error assigned is based upon the follow-
ing instructions, which his honor gave to the jury as a
part of his charge:

"The court now instructs you that negligence may
generally be defined as the neglect of the use of ordinary
care or skill towards a person to whom the defendant
owes the duty of observing ordinary care and skill, by

which neglect the plaintiff (without negligence on his part proximately contributing to produce the accident) has suffered injury to his person."

Objection is made to the matter appearing in parentheses. This matter was improperly inserted, but we do not think the error is grave enough to warrant a reversal; certainly not upon plaintiff in error's application. If any injury was done, it was to the defendant in error, since the jury were told, in substance, that, as a condition of finding negligence against the plaintiff in error, they must also find that the defendant in error was without negligence on his part proximately contributing to produce the accident. *Burke* v. *Citizens' St. Ry. Co.*, 102 Tenn., 409, 52 S. W., 170.

This assignment of error must be overruled.

2. The second assignment of error is based upon the following instructions:

"Though the act of a person in crossing or driving alongside the track in front of a street railway car which is moving towards him, near enough to be struck, may be negligence, yet, if the motorman in charge of the car observes the negligence, or could have observed the negligence, by the use of ordinary care, when the peril of a collision became imminent, and might have avoided its effect, by due care, in time to prevent an accident, and failed to do so, the company would in that event be liable."

There was no error in this instruction, and the assignment is overruled.

3. The third assignment raises an objection to the following instruction:

"The court further instructs you that there is an ordinance of the city of Memphis, a violation of which is a misdemeanor, which provides as follows:

"Article 39, section 5: 'Conductors and drivers of each car shall keep a rigid lookout for all teams, carriages, and persons, on foot and especially children, either on the track, or moving towards it, and on the first appearance of danger to such team or person, or other obstructions, the car shall be stopped in the shortest time and space possible.'

"Also another section, namely:

"Article 39, section 25: 'At no point within the city limits shall they [meaning the street cars] run at a greater speed than fifteen miles per hour.'

"The court instructs you that a failure to comply with the city ordinances above quoted, within the city limits, is negligence *per se*, and will render the railway company liable, if its negligence was the proximate cause of the accident and injury."

The facts applicable to this instruction are as follows:

There was testimony tending to show that the defendant in error and two other men were all sitting on the front seat of a covered wagon, which was proceeding along McLemore avenue, in the city of Memphis, near the southwest corner of Magnolia Park, very near to the track of the railway company—near enough to

be struck by a moving car; that while in such situation a car ran up behind the wagon, struck it, and threw defendant in error to the ground, severely injuring him; that the wagon could have been seen for a long distance ahead—about 300 yards—and the motorman could have stopped the car if he had begun to do so in time, but that he was propelling it or allowing it to run down grade at a speed of twenty miles per hour, and did not begin to check its speed until it was too late to avoid a collision; that he attempted to stop the car, when it was within a few feet of the wagon, by reversing the current, but it was then too late to prevent the accident.

The first point made against the instruction contained in the foregoing assignment is that the violation of a city ordinance is not negligence *per se,* as charged by the court.

In the case of *Queen* v. *Dayton Coal & Iron Co.,* 95 Tenn., 458, 32 S. W., 460, 30 L. R. A., 82, 49 Am. St. Rep., 935, it was held that the employment of an infant in a mine in violation of the statute forbidding such employment, and declaring it a misdemeanor, constituted *per se* such negligence as rendered the employer liable for all injuries sustained by the infant in the course of the employment.

In *Riden* v. *Grimm Bros.,* 97 Tenn., 220, 36 S. W., 1097, 35 L. R. A., 587, it was held that the sale of intoxicating liquors to an habitual drunkard, after notice from the latter's wife forbidding it, in violation of Acts 1889, chapter 68, making such sale a misdemeanor, was

*per se* such negligence as rendered the seller liable to the wife for the death of the husband, or other injury resulting to her from such sale.

In *Schmalzried* v. *White,* 97 Tenn., 36, 36 S. W., 393, 32 L. R. A., 782, the court had under consideration the question whether the violation of a city ordinance would impose the same liability as the violation of a statute. The ordinance under examination there concerned the erection of fire escapes on buildings.

In that case the court used the following language:

"It is insisted that the ordinance of 1890 imposed no duty upon the owners of this building, for a breach of which a civil action can be maintained by one sustaining an injury for such breach, and that therefore the trial judge was in error in letting this go to the jury. It is conceded that for a violation of a general statute a civil action will lie at the instance of a party injured thereby. *Queen* v. *Dayton, etc., Co.,* 95 Tenn., 458 [32 S. W., 460, 30 L. R. A., 82, 49 Am. St. Rep., 935]. But it is insisted that this is not true with regard to a violation of a municipal ordinance. An examination of the authorities will show much diversity of judicial opinion on this question. The cases of *Bott* v. *Pratt,* 33 Minn., 323 [23 N. W., 237], 53 Am. Rep., 47, *Osborne* v. *McMasters,* 40 Minn., 103 [41 N. W., 543], 12 Am. St. Rep., 698, *Hayes* v. *Mich. Central R. R.,* 111 U. S., 228 [4 Sup. Ct., 369, 28 L. Ed., 410], and *Salisbury* v. *Herchenroder,* 106 Mass., 458, 8 Am. Rep., 354, hold that for the violation of a municipal ordinance an action can

be maintained by a private individual injured thereby. The cases of *Philadelphia R. R.* v. *Ervin,* 89 Pa., 71, 33 Am. Rep., 726, *Flynn* v. *Canton Co.,* 40 Md., 312, 17 Am. Rep., 603, *Heeney* v. *Sprague,* 11 R. I., 456, 23 Am. Rep., 502, and *Vandyke* v. *City of Cincinnati,* 1 Disn. (Ohio), 532, take the contrary view."

The court, however, did not decide the question, but pretermitted the decision, on the ground that the case did not call for it, because of the existence of certain special facts which were determinative.

In *Weeks* v. *McNulty,* 101 Tenn., 495, 48 S. W., 809, 43 L. R. A., 185, 70 Am. St. Rep., 693, the court again referred to the question, citing and discussing authorities upon both sides of it, and intimating an opinion in favor of the liability, but did not find it necessary to render an authoritative decision upon the point.

At the April term, 1903, of this court, at this place, in the case of Memphis St. Railway Company v. John Williford (no opinion filed), error was assigned upon the charge of the circuit judge, substantially the same as that now complained of. Indeed, the same city ordinances which are copied into the third assignment, supra, were involved in that case, and were the subjects of the charge of the circuit judge there.

The court held, in an oral opinion delivered by Mr. Justice Shields, that the same rule laid down in *Queen* v. *Dayton Coal & Iron Company*, supra, in respect of statutes, also applied to city ordinances.

We have again examined the question, but deem it unnecessary to go into an extended discussion of it. To what has already been said in our cases we shall only add that we are unable to find any convincing force in the suggestion, occurring in many of the cases, that a distinction should be made between statutes and ordinances, in respect of the question referred to, on the ground that the former can create a cause of action between private individuals, or a civil cause of action in any sense, and the latter cannot. If an ordinance be passed for the protection of the individuals composing the public, as distinguished from the municipality itself, and be within the legislative power of the corporation, and any member of the public suffer an injury peculiar to himself by reason of the violation of such ordinance by some other person, it is difficult to see why, on any sound theory, he may not have an action therefor against the offender. Such ordinances are devised for the purpose of creating rules of conduct for the guidance of the people, just as statutes are, and they may be said to emanate ultimately from the legislature, since municipalities, in this State, at least, can exercise no powers which are not expressly or by implication conferred upon them by that body.

The next point made under this assignment applies only to the first ordinance quoted.

It is insisted that this ordinance is unreasonable; that it requires that the employees of the company shall use perfect judgment, perfect skill, and that the cars

of the company shall be perfect in equipment. Furthermore, it is said that to require the company to stop its cars upon the first appearance of danger is unreasonable, because the necessities of rapid transit require that the danger must be imminent before a stop is made. Again, it is said that the ordinance lays down a rule contrary to that established by this court in *Citizens' Street Railway Company* v. *Shepherd,* 107 Tenn., 444, 64 S. W., 710.

It is true that the ordinance does use the expression "on the first appearance of danger to such teams or persons . . . the car shall be stopped," etc., but this language must be given a reasonable construction. Taking into consideration the purpose intended to be served by the ordinance, we are of the opinion that it means, when the danger of a collision becomes imminent, the car shall be stopped. The danger to be apprehended is always that of a collision. It is always potential when street cars and other vehicles, horsemen, and pedestrians are using the same thoroughfare. It does not become actual until it is perceived to be imminent. It may be then said to first appear as a real danger.

This construction seems to us a reasonable and just one, and, being such, meets the first part of plaintiff in error's objection.

We think there is less force in the second phase of the objection. When the danger of a collision is imminent, it is certainly not unreasonable to require the

railway company to stop its cars in the shortest time and space possible. This, of course, implies that the machinery and appliances shall be in proper condition, and also that the servants of the company shall do all that men of reasonable care, prudence, and alertness, in the same situation and with the same appliances, could do to stop the car and prevent the collision. *St. Ry. Co.* v. *Dan,* 102 Tenn., 320-325, 52 S. W., 177.

Nor is this rule in conflict with that laid down in *Citizens' St. Railway* v. *Shepherd,* supra.

In that case the court held that, when the danger of a collision became imminent "then it became the duty of the motorman to use ordinary care to stop his car and prevent an -accident." But ordinary care under such circumstances—that is, when the danger of a collision is imminent—is that degree of care which is described in the next, but one, preceding paragraph.

The third assignment is therefore overruled.

4. The fourth assignment is based upon the following instruction contained in the judge's charge:

"So, therefore, if you find from a preponderance of the evidence that on July 12, 1902, plaintiff was driving a covered wagon along McLemore avenue, in this city, and was driving said wagon beside and so near the track of defendant company that a car could not pass that wagon without a collision; and if you find that the servants of defendant company propelled an electric car along the track on said street from the rear of and against the wagon of plaintiff, overturning it and

throwing plaintiff out and injuring him; and if you further find that defendant's servants saw, or by the exercise of ordinary and reasonable diligence could have seen, said wagon turning into the track, or moving in such position that it could not be passed without a collision, and failed, when he had reason to apprehend danger, to regulate the speed of his car so that it might be quickly stopped, should occasion require it, or that he failed, when the danger became imminent, to apply the brakes and sound the gong or bell, or give other signal, and use every means in his power to stop the car and prevent an accident; and if you find that such negligence and want of care of defendant's servants, if shown, was the proximate cause of (that is to say, the cause which led to or directly contributed to produce) the accident and injury—then there can be a recovery, and your verdict should be for the plaintiff."

The testimony necessary to be considered in disposing of this assignment is as follows:

There is evidence tending to show that, when the motorman first saw the wagon in which the defendant in error was riding, it was proceeding eastward, along the street, between street crossings, at a distance of four or five feet from the track, leaving sufficient room for the car to pass; that the car was also going east, following the wagon; that when the car reached a point about thirty yards distant from the wagon, at which point the motorman supposed the occupants of the wagon could hear the gong, he sounded it repeatedly;

that, when the car had reached a point from ten to fifteen feet distant from the wagon, the horse drawing the wagon suddenly turned in towards the track, bringing the wagon within striking distance of the car moving thereon; that the motorman continued to sound the gong until he got to the wagon and saw that he had to reverse; that he then reversed the car, but not soon enough to prevent the collision; that reversing is the speediest method of stopping the car.

There was also evidence tending to show that, for a space of fifty yards immediately preceding the point where the wagon was struck, it was moving along close enough to the track to be struck by a car moving thereon, and that it was in plain view of any one upon the front of the approaching car, for a distance of 300 yards, from the point of collision.

There was no evidence tending to show that the motorman applied the brakes, but only that he sounded the gong, and then, as above stated, reversed the current.

The error complained of is to be found in the following language appearing in the first excerpt above quoted: "or that he failed, when danger became imminent, to apply the brakes and sound the gong or bell, or give other signal, and use every means in his power to stop the car and prevent an accident."

It is said that the rule thus laid down would impose upon the motorman the performance of duties which were practically impossible of accomplishment; that by this rule he is required to sound his gong, give other

signal, to apply his brake, and to use every means in his power to stop his car; and that this would make the motorman capable of reversing with one hand, of winding the brake with the other, and at the same time stamping his gong to warn the person who had thrust himself or fallen into danger. We have no statute declaring that the special acts referred to by the circuit judge, or any other special act, should be performed by the servants of the company. The question, then, is one at large, to be determined upon general considerations drawn from the nature of the particular business, and the habits and customs of the people whom it serves. Street cars are designed to ply their business upon public streets—many of the streets densely crowded. People in vehicles and on foot must be constantly encountered, going in both directions, with the course of the car and in the opposite course, and most generally in the hurry of business. In other words, the car may at any time have to pursue its way through the throng of a city's business. Under such circumstances, and even when the streets are not crowded, a mishap may at any moment occur, and may come in a manner which no man can accurately forecast in all its details. The person propelling the car should be left free to choose the best means of preventing the accident at the time, as the situation is then presented to him. The means at hand for preventing the collision are the sounding of the gong for the purpose of warning the person about to be collided with, in order that he may

Railway v. Haynes.

save himself, the putting on of brakes, and the applica-
tion of the reverse lever. In some situations the sound-
ing of the gong may be the means which the occasion
requires as the best means for the prevention of the ac-
cident; in others, it may be best to apply the brake; in
others, the reverse lever. Sometimes it may be reason-
ably within the power of the motorman to put in use
two of these means, and sometimes, perhaps, all of
them; sometimes only one of them; and under some
circumstances, we may well assume, it would be best
that he should attempt only one of the means provided,
as being the most efficient, time lacking to use the
others, or even to attempt their use. Subsequently,
when his conduct is displayed in the evidence for ex-
amination before a court and jury, it is not for the
judge to say that, under the circumstances surrounding
and attending the accident detailed, he should have
done this or that particular thing; but, on the contrary,
when all of the circumstances are shown, and it is made
to appear what he did at the time for the prevention
of the accident, it is for the jury to say whether he did
all that he could do (that is, all that a man of ordinary
intelligence and prudence and of reasonable alertness
could have done under the special circumstances
proven) to stop the car and prevent the accident. An
instruction that the motorman should do some special
thing is an invasion of the province of the jury by the
circuit judge. In the present case the invasion of the
province of the jury is the more marked, because, while

the evidence tended to show that the motorman did reverse his car, there was no evidence tending to show that he put on the brake. The circuit judge, in effect, told the jury that he should have applied the brake.

It is insisted that the error was corrected, or at least rendered innocuous, by instructions contained in other parts of the charge, referred to in the brief of counsel for defendant in error. We have carefully examined these excerpts, and do not think they cured the error. We deem it unnecessary to encumber this opinion with a discussion of that matter.

In what has been said in disposing of the foregoing assignment of error, we are not to be understood as denying to the circuit judge the right to call the jury's attention to the various means at hand for preventing accidents shown by the testimony in any given case, and the duty of the company's servants to so employ them as to prevent accidents, if within their power to do so. The error in the present case is in specifying that in a given exigency—that is, the danger of collision—any special one of the means at hand should be employed. The jury should be left to determine from the whole evidence whether the company's servants used the means that should have been employed in the particular exigency under examination, and, in view of all the circumstances, acting as men of ordinary skill, intelligence, prudence, and alertness would act under similar circumstances.

5.  It is next insisted that the circuit judge erred in giving the following instruction to the jury:

"And if, therefore, you find from the evidence that plaintiff was driving eastwardly beside the track at the time of the accident, and so near the rails as to prevent the car from passing the rear without collision, and that while so driving he failed to look back from time to time along the track, or to listen for signals from an approaching car, or if you find that, thus driving along the track, he failed to turn out and leave the track unobstructed on the approach of the car from the rear, or if you find that plaintiff drove upon the track in front of an approaching car without looking or listening for same, or so short a time before the wagon was struck as to prevent any possibility of stopping the car in time to prevent an accident, then it is your duty to determine whether, in doing or omitting to do any one of these acts, plaintiff was guilty of contributory negligence."

But this instruction should be read in connection with the following, which immediately succeeds the foregoing in the charge:

"And in doing this you may consider all the facts and circumstances proven at the trial, as surrounding the accident, including, so far as proven, the topography of the locality at the place of the accident; the character of the vehicle in which plaintiff was riding; the position of the vehicle at the time of the accident; the speed of the approaching car; the distance at which it could have been seen or heard by the driver of the wagon if he had

Railway .v. Haynes.

looked and listened—in fine, to every minute detail of the accident; and if you find, after considering all the facts and circumstances proven to you, that plaintiff was guilty of contributory negligence in any of these respects, and that such contributory negligence was the proximate cause of (that is to say, the cause which led to or directly contributed to produce) the accident and injury, then there can be no recovery, and your verdict should be for the defendant."

The foregoing instructions should also be considered in connection with the following, likewise appearing in the charge, viz.:

"It is the duty of a driver of a private vehicle, while on the track, or so near to it as to prevent a car passing without a collision, not only to turn off when called upon by the servant of the railroad company, but to listen to whatever signal there may be of an approaching car; and he should also look behind him from time to time, so that he may, if the car be so near, turn off and allow it to pass without hindrance or any slacking of ordinary speed, and, if he fail to observe this precaution, he does so at his own risk."

It is insisted that the error in the first paragraph quoted above consists in allowing the jury to decide whether or not the facts set forth constituted contributory negligence.

It was urgently complained of by counsel for plaintiff in error during the discussion at the bar, and the same statement and complaint appear in the brief, that

the circuit judge construed one of the opinions of this court as holding that the question of contributory negligence is always one for the jury, and never for the court; referring to *Knoxville* v. *Cox,* 103 Tenn., 368, 53 S. W., 734.

In that case the court used the following language: "The question of contributory negligence, whenever the facts of the case raise it, cannot be settled by the court, but goes to the jury, whose exclusive province it is to consider and determine it." A moment's consideration will discover that the proposition, in the sense in which the court intended it to be understood, was and is indisputably sound. To establish the defense of contributory negligence against the plaintiff in an action for personal injuries brought by him, it must always appear (1) that the defendant was guilty of some negligence (*Payne* v. *Nashville, etc., R. Co.,* 106 Tenn., 167, 61 S. W., 86) in bringing about the injury; (2) facts from which negligence upon the part of the plaintiff can be inferred; (3) that such negligence of the plaintiff contributed to the injury. The third point, under our system of the division of duties between the court and jury, must always be one of fact for the jury. This was the meaning of the court in enunciating the rule referred to. But the court did not mean to say that the circuit judge could not, in a proper case, instruct the jury that such and such conduct on the part of either the plaintiff or defendant would amount to negligence *per se* or negligence in law. In *Knoxville Iron Com-*

_pany_ v. _Smith,_ 86 Tenn., 45,· 48, 49, 5 S. W., 438, it was held, on the facts of the case, that such an instruction ;should have been given by the circuit judge.  See _Oliver_ v. _Nashville,_ 106 Tenn., 273, 278-280, 61 S. W., 89; also _Postal Tel. Co._ v. _Zopfi,_ 93 Tenn., 369, 372, 373, 24 S. W., 633; _Nashville St. Ry. Co._ v. _Norman,_ 108 Tenn., :324, 67 S. W., 479; also as cited and approved in _Memphis St. Ry. Co._ v. _Riddick,_ 2 Cates, 227, 75 S. W., 924; _Stewart_ v. _Nashville,_ 96 Tenn., 50, 56, 57, 33 S. W., ·613.  It is to be observed that in the instruction sanctioned in _Knoxville Iron Co._ v. _Smith_ the question was left to the jury whether the facts therein held to constitute negligence contributed to the injury. This is apparent from the words "and his failure to do so was negligence which would prevent his right to recover from the defendant for any injury resulting to him therefrom."

As above said, the question of contributory negligence, in the aspect above indicated, is always a matter for the jury.  Subsequently, however, on appeal, in considering the verdict of the jury under an assignment that there is no evidence to sustain the verdict, or upon reviewing the action of the court below upon a demurrer to the evidence, this court will determine whether the facts proven clearly show contributory negligence upon the part of the plaintiff below that acted as a proximate cause to produce the injury, and, upon ascertaining the existence of such proximate contributory negligence, will reverse the judgment.  _Chattanooga Light_

& *Power Co.* v. *Hodges,* 109 Tenn., 331, 70 S. W., 616, 60 L. R. A., 459; *Heald* v. *Wallace,* 109 Tenn., 346, 71 S. W., 80.

Whether the facts proven in any given case amount to negligence, in law, must be determined as the cases arise. We need not go further into this matter. It is sufficient to say, for the present case, that we do not think the plaintiff in error has anything to complain of in the instructions which were given, as above set out, when they are all taken together. There was evidence tending to show that the street where the defendant in error was driving was of such a character that it was best to drive close to the track, near enough to be within the sweep of a passing car, and that the wagon did not run suddenly toward the track, or at all, but went straight forward, and that it could have been seen by the motorman from a distance of 300 yards. With these circumstances in the record, we cannot say that the defendant in error could have anticipated that a car in broad daylight would run him down from the rear, and that there was, as matter of law, such failure of duty on the part of plaintiff in error as would justify the circuit judge in giving a peremptory instruction against him in respect of negligence. We think the matter was properly left to the jury. *Wilson* v. *Citizens' St. Ry. Co.,* 105 Tenn., 74, 58 S. W., 334; *Memphis St. Ry. Co.* v. *Riddick,* 2 Cates, 227, 75 S. W., 924; *Electric Ry. Co.* v. *Lawson,* 101 Tenn., 406, 47 S. W., 489.

6. Error is assigned upon the following instruction of the court:

"You are likewise instructed that if you find that both plaintiff and defendant were guilty of negligence, but that defendant's negligence was the proximate or contributing cause of the accident, and you find for the plaintiff, you may, in that event, consider plaintiff's negligence in mitigation of damages."

The criticism upon this portion of the charge is that it leaves it entirely optional with the jury to consider or to overlook the plaintiff's negligence; in other words, that the jury are allowed to take into the reckoning the negligence of the plaintiff, in mitigating the damages, if they feel inclined to do so, but that they are not told positively that any negligence of the plaintiff below, either proximately or remote, should go in reduction of damages which would otherwise be recovered by him.

The well-settled rule of law in this State is that, where the plaintiff's negligence is the direct and proximate cause of the accident, it will bar a recovery, but, if it be remote, it must mitigate or lessen the damages; it being held that where the plaintiff is negligent he should not recover in the same degree as if he were free from fault.

The circuit judge should charge the jury that it is their duty to reduce the plaintiff's damages in case they find that he has been guilty of contributory negligence. In the case of *R. R.* v. *Nowlin* (no opinion filed) the instruction contained in the charge which was held to be error was as follows:

The negligence of the person in all cases can be looked

to in mitigation of the damages or the amount of recovery."

For this error the judgment was reversed. The court said upon this subject: "If the law be as we do declare—that contributory negligence upon the part of the plaintiff entitled the defendant, as a matter of right, to have such considered by the jury in reduction of damages—then it was the duty of the circuit judge to say to the jury, after first explaining what conduct upon the part of the plaintiff constituted contributory negligence, that, if they found that the plaintiff was guilty of such negligence at the time of the accident, then it was their duty to look to it in assessing the damages, according as they find his negligence to be slight or gross."

This assignment of error must therefore be sustained the court having, in substance, instructed the jury, as appears from the above excerpt, that it was in their discretion whether they would reduce the damages for the contributory negligence of the plaintiff below, instead of instructing them according to the rule laid down in *R. R.* v. *Nowlin,* supra.

7. Error is assigned upon the refusal of the circuit judge to give in charge to the jury the following instructions requested by the plaintiff in error:

"If you believe from the evidence that plaintiff was guilty of negligence, and that this negligence combined with the negligence of defendant to produce the acci-dent, so that both acts together constituted the proxi-

Railway v. Haynes.

mate cause of the injury, then the negligence of the plaintiff however slight, would bar a recovery, and you should find for the defendant."

This instruction stated a correct rule of law, and should have been given to the jury. *Memphis St. Ry. Co.* v. *Wilson,* 108 Tenn., 618, 69 S. W., 265; *Nashville St. Ry. Co.* v. *Norman,* 108 Tenn., 331, 67 S. W., 479; *Saunders* v. *R. R.,* 99 Tenn., 135, 41 S. W., 1031; *Barr* v. *R. R.,* 105 Tenn., 547, 58 S. W, 849.

This assignment of error must therefore be sustained.

8. The matters complained of in the eighth assignment of error are sufficiently covered by the general charge, and the request therein referred to was properly refused.

For the errors above indicated, the judgment of the court below must be reversed, and the cause remanded for a new trial.