**Robert G. SMITH and wife, Mary E. Smith, Individually, and as the parents and next-of-kin for Kyle Smith, Plaintiffs/Appellees,**

v.

**Katherine Ann OWEN (Wallace), Defendant/Appellant.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

June 19, 1992.

Permission to Appeal Denied by Supreme Court Oct. 19, 1992.

John E. Jones, Moore, Jones, Rader & Clift, P.C., Cookeville, for plaintiffs/appellees.

James D. Madewell, Madewell and Jared, Cookeville, for defendant/appellant.

## OPINION

CANTRELL, Judge.

This appeal is from a judgment of liability, on the theory of negligence *per se*, for an unknowing passive violation of a municipal housing ordinance. We affirm.

### I. Facts and Procedural History

Plaintiffs brought this suit against their landlord, seeking damages for injuries suffered by their minor child when he crawled between plaintiffs' clothes dryer and a pipe against the wall and received a severe electrical shock. They asserted the following theories: (1) that defendant violated Section 303.4 of the City of Cookeville Housing Code, as well as state regulations enacted pursuant to Tenn.Code Ann. §§ 68–40–101 *et seq.*, and that such violations constitute negligence *per se;* (2) that defendant is liable under the doctrine of strict liability as stated in the Restatement (2d) of Torts, § 402(a); and (3) that the defendant is liable under the general principles of negligence. The parties agreed to bifurcate the trial and submit the issue of liability to the trial judge sitting without a jury, with the amount of damages to be submitted to a jury should the judge find any liability.

On the date of the accident, May 25, 1987, plaintiffs, Robert and Mary Smith, resided in a house in Cookeville, Tennessee, which they had been renting from defendant, Katherine Owen Wallace, since August of 1981. Upon inspecting the dryer and the wiring in the house after the accident, an electrician discovered that the wiring leading to the electrical outlet at the dryer was reversed, so that the entire frame of the dryer was electrified with 110 volts of electricity. There was a grounded gas pipe directly behind the dryer, and the electrician concluded that the child must have received the shock as a result of coming in contact with the pipe and the electrified dryer frame at the same time.

The electrician testified that no competent electrician would have installed the wiring in the manner he found it. He discovered the defect using a meter commonly used by electricians. He also testified that, since electricity would not flow between the metal dryer frame and the linoleum floor, persons using the dryer would not have been alerted to the fact that it was electrified. After moving into this house, plaintiffs had noticed that it took an unusually long time for their clothes to get dry, but assumed the problem was with the dryer. After taking the dryer to an appliance repair shop, where no problem was found, plaintiffs had simply assumed the dryer was slow and kept on using it.

Ms. Wallace has owned the property where the accident occurred since 1979. Before that her parents and grandparents had owned it since 1924. The house was completely remodeled and rewired in 1951. Defendant's parents lived there from 1951 to 1961. Since 1961, the house has been rented to various tenants.

From the testimony of defendant, her mother and some former tenants, the trial court found that the electrical outlet in question was installed sometime between 1961 and 1969. No one had ever complained to defendant, or to the municipal codes inspector, about the performance or safety of this outlet. The codes inspector testified that his department does not routinely conduct inspections unless a complaint is received.

After the remodeling and rewiring of the house in 1951, but prior to plaintiffs moving in, the City of Cookeville adopted the Standard Housing Code, 1979 edition, published by The Southern Building Code Congress International. Chapter III of the Standard Housing Code, captioned "MINIMUM STANDARDS FOR BASE EQUIPMENT AND FACILITIES," specifically imposes certain duties on owner-occupants and landlords:

SECTION 301—GENERAL

No person shall occupy as owner-occupant or let or sublet to another for occupancy any dwelling or dwelling unit designed or intended to be used for the purpose of living, sleeping, cooking or eating therein ... which does not comply with [the enumerated requirements in Chapter III].

The trial court found that the condition of the electrical outlet in question was not in compliance with the following section:

SECTION 303.4—ELECTRIC LIGHTS AND OUTLETS REQUIRED

... In addition to the electric light fixture in every bathroom and laundry room, there shall be provided at least one (1) convenience outlet. Every such outlet and fixture shall be properly installed, shall be maintained in good and safe working condition, and shall be connected to the source of electric power in a safe manner.

The court also found that the injured child was within the class of persons the ordinance adopting the Standard Housing Code was intended to protect. Further, the court found that the violation of the ordinance was the proximate cause of the child's injuries, pointing out that "an inspection of the premises prior to the lease would have revealed the defective condition." The court also found that plaintiffs were not guilty of contributory negligence.

The trial court held defendant liable on the basis of negligence *per se* for violating the city ordinance. The court held that defendant was not liable on the theory of simple negligence, finding that "by reasonable care and diligence, the Defendant could not have known of the unsafe and dangerous condition." While this holding appears to contradict the one in the previous paragraph, we are only concerned in this appeal with the negligence *per se* theory. The court concluded that it did not need to address the issues of whether defendant violated the state regulations and whether strict liability should apply in these circumstances.

The trial court granted defendant's motion for interlocutory appeal pursuant to Rule 9, T.R.A.P.

## II. Municipal Housing Code Establishes the Applicable Duty of Care

The trial court held that the date of letting the premises, rather than the date of construction or remodeling, determines whether the requirements of the housing code are applicable in this case. The Southern Building Code Congress International publishes seven other major codes, including a building construction code. The preface to the 1979 edition of the Standard Housing Code explains that its purpose is to establish minimum standards relating to the "use, occupancy and maintenance of *existing* residential buildings." (Emphasis added). Section 101.4 of the housing code expressly provides that "[t]he provisions of this Code shall apply to any dwelling, apartment, apartment house or rooming house *irrespective of when said building was constructed, altered, or re-*

*paired."* (Emphasis added). The various subsections of Section 101.4 deal with how to determine whether additions, alterations or repairs made to existing buildings shall be required to comply with the municipal building code, *in addition to* the housing code.

The trial court correctly gave no weight to the fact that the defective wiring was installed before the housing code was adopted by the city council. Section 301 imposes a duty on the property owner not to occupy, and not to lease to another, any *existing* building unless that building complies with each and every requirement enumerated in Chapter III of the housing code. The fact that the faulty wiring was installed without the knowledge of defendant and before the enactment of the housing ordinance does not relieve her from this duty.

III. Negligence *Per Se* Liability Not Dependent on Landlord's Actual or Constructive Notice of Non–Complying Condition Itself

The main thrust of appellant's argument is that "the intent of the [Standard Housing] Code is perverted when such Code is utilized as a hammer in civil litigation to support a theory approaching strict liability and/or negligence *per se.*" She acknowledges that, as a general rule, violation of an ordinance does constitute negligence *per se.* However, she contends, where the defendant had neither actual nor constructive knowledge of the violation and was not otherwise negligent, Tennessee courts have declined to find liability. To do so, she insists, would be to impose strict liability on the defendant based on an unknown latent defect. She also points out that the housing ordinance expressly incorporates an official enforcement mechanism and does not express the intention to create a private cause of action.

■ The doctrine of negligence *per se* is firmly established in our case law. In order to recover on the basis of negligence *per se,* three elements must be established. First, it must be shown that the defendant violated a statute or ordinance which "imposes a duty or prohibits an act for the benefit of a person or the public." *Nevill v. City of Tullahoma,* 756 S.W.2d 226,

232–233 (Tenn.1988) (citing *Queen v. Dayton Coal & Iron Co.,* 95 Tenn. 458, 32 S.W. 460 (1895) and *Memphis Street Railway v. Haynes,* 112 Tenn. 712, 81 S.W. 374 (1904)). Second, the proof must show that the injured party was within the class of persons whom the legislative body intended to benefit and protect by the enactment of that particular statute or ordinance. *Traylor v. Coburn,* 597 S.W.2d 319, 322 (Tenn.App. 1980) (citing *Carter v. Redmond,* 142 Tenn. 258, 218 S.W. 217 (1920)). In addition to establishing negligence *per se* by showing these two elements, the plaintiff must of course show that such negligence was the proximate cause of the injury. *Brookins v. The Round Table,* 624 S.W.2d 547, 550 (Tenn.1981); *Alex v. Armstrong,* 215 Tenn. 276, 283, 385 S.W.2d 110, 114 (1964).

■ We agree that Ms. Wallace did not have notice of the unsafe condition of the electrical outlet. However, this is immaterial, because negligence *per se* liability turns on constructive notice of the *duty* imposed by the statute or ordinance, not of the non-complying condition itself. For the reasons discussed below, we hold that, as a matter of law, appellant had constructive notice of the duty of care imposed by the housing ordinance and is liable for the injury proximately caused by her breach of that duty.

a. Owner Subject to Liability for Breach of Duty to Inspect Electrical Outlets Before Leasing Property

The housing ordinance, by virtue of its enactment by the Cookeville City Council, placed all dwelling owners in that city on *constructive notice* of the duties and standards of care articulated therein. One of those duties is the duty not to lease a dwelling to someone unless everything in that dwelling complies with the requirements of the housing code. In the instant case, the uncontradicted evidence establishes that the faulty wiring that caused the child's injury existed at the time defendant first rented the dwelling to plaintiffs. Defendant was on constructive notice of her duty not to rent the apartment to them without first making sure it was in compli-

ance with the housing code. It is not her knowledge or lack of knowledge of the non-complying condition itself that determines whether she is subject to liability for negligence *per se*, but rather her constructive knowledge of the duty to inspect and be sure there are no code violations before turning the premises over to a lessee.

The purposes of the Standard Housing Code are described as follows:

### SECTION 101.2—CODE REMEDIAL

This Code is hereby declared to be remedial, and shall be construed to secure the beneficial interests and purposes thereof—which are public safety, health and general welfare—through structural strength, stability, sanitation, adequate light and ventilation, and safety to life and property from fire and other hazards incident to the construction, alteration, repair, removal, demolition, use and occupancy of residential buildings.

The effectiveness of the housing ordinance in promoting health and safety would be severely undermined if dwelling owners were allowed to use lack of knowledge of a non-complying condition as a defense against civil liability for injuries proximately caused by their failure to comply with the ordinance. In essence, defendant is asking this court to insulate her from liability for no other reason than that she either did not familiarize herself with, or chose to ignore, the sections of the housing code that impose the duty to inspect. This we cannot do.

■ The housing code does provide for enforcement by the municipality. The appointment of a "Housing Official" is provided in Section 102.1, and the powers and duties of the housing official are provided in Section 103. Section 104 authorizes the housing official to make inspections. The procedure for notifying the owner of a code violation is described in subsection 103.2. Sections 105–107 deal with the process for appealing actions of the housing official to the Housing Board of Adjustments and Appeals. Section 309 provides the legal procedure for condemnation of unfit dwellings. The code also expressly provides for prosecuting persons who violate any of its provisions:

### SECTION 108—VIOLATIONS AND PENALTIES

Any person, firm, corporation or agent, who shall violate a provision of this Code, or fail to comply therewith, or with any of the requirements thereof ... shall be prosecuted within the limits provided by state or local laws....

We do not see the existence of a municipal enforcement mechanism, or the provision for criminal prosecution, as a basis on which to distinguish the housing ordinance at issue here from the various ordinances and penal statutes implicated in other cases where Tennessee courts have allowed private causes of action based on negligence *per se*. See, e.g., *Brookins v. The Round Table, Inc.*, 624 S.W.2d 547 (Tenn.1981) (statute prohibited sale of alcohol to minors and provided criminal penalties); *Alex v. Armstrong*, 215 Tenn. 276, 385 S.W.2d 110 (1964) (statute declared allowing dogs to be at large a misdemeanor and provided for fines).

In order to accomplish its purposes, the housing code imposes specific duties on owners of dwellings. The fact that the property owner may be fined, have his or her property condemned, or be subjected to criminal prosecution does nothing to make whole the person injured as a proximate result of the owner's noncompliance. That is why the doctrine of negligence *per se* has been established as a just basis for civil liability.

At the same time, making the injured party whole is not the sole tenet on which the doctrine rests. As discussed above, the doctrine applies only where the statute or ordinance imposes a duty owed to a person or class of persons. Appellant's contention that negligence *per se* liability on facts such as these is, in effect, strict liability, is without merit.

b. **Tenants Within Class Intended to be Protected by Housing Ordinance**

■ The duty of care imposed by Section 301 of the housing code applies to owners who either occupy the premises themselves

or lease them to another, and to lessees who sublet to third parties. The primary class of persons intended to be protected by the ordinance is obviously those who will actually be dwelling in the premises. At the commencement of the lease period, the person who owns or has had control of the premises is in a better position to know about dangerous conditions then existing than is the new tenant.

The plaintiffs here moved into premises on which a dangerous condition had been latent for a number of years. The ordinance was designed to protect them from being injured by such non-complying conditions. That is why the ordinance imposes on the lessor the duty to inspect the premises before turning them over to a new tenant. The plaintiffs are within the protected class.

### c. Defendant's Failure to Inspect was Proximate Cause of Injury

The trial court found that the defendant's violation of the ordinance was the proximate cause of the injury. As we have stated, the ordinance imposed a duty on defendant to inspect the wiring before turning the premises over to plaintiffs. In the instant case, the electrician discovered the faulty wiring using a meter with which any electrician would be familiar. The trial court specifically found that "an inspection of the premises prior to the lease would have revealed the defective condition." The preponderance of the evidence supports the trial court's finding of proximate cause.

The trial court found that plaintiffs were not contributorily negligent. Appellant has not contested this finding.

### IV. Conclusion

For the reasons stated above, we affirm the trial court's judgment of liability on the basis of negligence *per se*. The cause is remanded to the Circuit Court for Putnam County for further proceedings consistent with this opinion. Tax the costs on appeal to appellant.

LEWIS, J., concurs.

TODD, P.J., dissents with opinion.

TODD, Presiding Judge, dissenting.

With great respect and deference to the authorities and reasoning upon which the conclusion of the majority is based, I must register my disagreement with what I consider to be an unjust result.

The record reflects that the defective wiring was installed without the knowledge or consent of the defendant-landlord before the enactment of the city code which, according to the majority, made the landlord an insurer of the safety of the premises. This is contrary to the long established law of landlord and tenant in this State. *Maxwell v. Davlo Corp. of Tenn.*, Tenn.App. 1989, 776 S.W.2d 528, and authorities cited therein.

The facts of this case are tragic and regrettable, but were the result of negligence of a person unknown without concurrence of negligence of any party to this case.

The judgment should be reversed and the case dismissed.