IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT JACKSON

FILED

September 5, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

**JAMES CHASE, JR.,**

    Plaintiff-Appellant,

Vs.

Shelby Law No. 58129 T D
C.A. No. 02A01-9607-CV-00171

**PHYSIOTHERAPY ASSOCIATES,
INC., F. WILLIAM HACKMEYER, JR.,
and EVERETT P. HAILEY,**

    Defendant-Appellees.

FROM THE CIRCUIT COURT OF SHELBY COUNTY
THE HONORABLE D'ARMY BAILEY, JUDGE

Eugene C. Gaerig of Memphis
For Appellant

John W. Leach of Memphis
Spicer, Flynn & Rudstrom of Memphis, of Counsel
For Appellees

*AFFIRMED*

Opinion filed:

**W. FRANK CRAWFORD,
PRESIDING JUDGE, W.S.**

**CONCUR:**

**ALAN E. HIGHERS, JUDGE**

**DAVID R. FARMER, JUDGE**

This is premises liability suit. Plaintiff, James Chase, Jr. (Chase), appeals the trial court's

entry of a judgment on the jury verdict finding that the defendants, F. William Hackmeyer, Jr.

and Everett P. Hailey, were 50% negligent and that Chase was 50% negligent, therefore barring Chase's recovery.

Chase suffers from multiple sclerosis, and his physician referred him for physical therapy to the Neurological Center of Physiotherapy Associates, Inc., a tenant in Executive Square Office Building in Memphis, Tennessee owned by defendants F. William Hackmeyer, Jr. and Everett P. Hailey. Chase went to Physiotherapy Associates for physical therapy on December 15 and 17, 1992. On December 29, 1992, while on his way to his third physical therapy appointment with Physiotherapy Associates, Chase allegedly suffered injuries when his wheelchair fell over backwards as he was ascending the handicap ramp in front of Executive Square.

On December 1, 1993, Chase filed a complaint against Physiotherapy Associates, F. William Hackmeyer, Jr., and Everett P. Hailey alleging that the defendants were negligent in maintaining the property and that Chase was injured as a direct and proximate result of the defendants' negligence. The complaint further alleges that the defendants breached their common law duty to provide Chase with a safe ramp that could be used by persons in wheelchairs. The complaint avers that the ramp was too narrow, too short, and too steep and that the ramp constituted a dangerous incline that was unsafe for wheelchair use. The complaint further avers that the defendants knew or should have known that the ramp was not safe for disabled persons using wheelchairs. The complaint also avers that the ramp was the only ramp available for disabled persons using wheelchairs wishing to visit Physiotherapy Associates, Inc. and that an ordinary person would not know that the ramp was too steep, too narrow, too short, and could cause a wheel chair to turn over.

In addition, the complaint alleges that the defendants violated the Tennessee Public Building Accessibility Act, T.C.A. § 68-120-201 *et seq.* (the Act), in that the ramp did not meet the minimum specifications as set forth in T.C.A. § 68-120-204 because it had a slope steeper than twelve inches vertical rise for each twelve feet horizontal run. The complaint alleges that this violation of the Act was negligence per se. Furthermore, the complaint avers that the ramp violated the slope and clearance provision applicable to ramps of the 1976 Building Code of the City of Memphis and Shelby County, Tennessee. As a result of the fall, Chase alleges that he incurred pain and suffering, exacerbation of his multiple sclerosis, medical expenses, mental anguish, deterioration of his physical condition, loss of earning capacity, and loss of enjoyment

2

of life.  The complaint requests a jury trial and prays for compensatory damages in an amount not to exceed $1,000,000.00.

Defendants Hackmeyer and Hailey filed an answer denying that they designed or constructed the handicap ramp on which Chase fell and stating that the ramp was in existence when they acquired ownership of the premises.  The defendants further deny that they were guilty of any negligence or other conduct that caused or contributed to Chase's alleged injuries.  They admit that the Act was in full force and effect at the time of the accident, but deny that they violated any portion of the Act.  In addition, the defendants assert that the Act has no application to buildings existing at the time of its enactment.  The defendants further admit that the Memphis building code was in full force and effect at the time of the accident, but deny its applicability because the building code also does not apply to buildings in existence at the time of the enactment of the Act.  In addition, the defendants aver that Chase placed himself in a position that he knew or should have known would likely cause injury, constituting a voluntary assumption of a known risk and thus a complete bar to his recovery.  Finally, the defendants aver that Chase was guilty of negligence or other conduct that caused or contributed to his alleged injuries, damages, or losses and that this negligence or other conduct was in a degree equal to or greater than any alleged negligence or other conduct on their part.

On January 29, 1996, Chase filed a motion to amend the complaint to change the date of the building code to 1967 and to allege that the ramp when installed did not meet the 1967 building code, particularly § 617.0.  The trial court entered an order allowing this amendment on the same day.[1]  On February 8, 1996, during trial, Chase filed a motion to amend the complaint again to set forth additional provisions of the 1967 Memphis building code.  On February 12, 1996, the trial court entered an order denying Chase's motion to amend the complaint.

Sometime before trial, the trial court granted summary judgment in favor of Physiotherapy Associates, Inc. on the ground that the handicap ramp was the landlord's responsibility, and not the tenant's.  Consequently, Physiotherapy Associates, Inc. was not a

---

[1] This was apparently Chase's second amendment to the complaint.  Although the record does not contain the first amendment, his amended complaint states that the ad damnum is $2,000,000.00 pursuant to the court's order of July 8, 1994 allowing the amendment.

defendant at trial and is not a party to this appeal. The jury trial of the case against the remaining two defendants began on January 29, 1996. At the end of the defendants' proof, on February 13, 1996, Chase moved for a directed verdict on the issue of comparative negligence. The trial court denied this motion from the bench and submitted the case to the jury. On February 15, 1996, the jury returned a verdict form stating that the defendants were 50% at fault and that Chase was 50% at fault. On February 23, 1996, the judge entered a judgment on the jury verdict and dismissed the case.

On March 19, 1996, Chase filed a motion for the entry of a judgment in accordance with Tenn. R. Civ. P. 59.01 and 50.02. Chase also filed a motion for a new trial and to amend or make additional findings of facts and/or alter or amend the judgment. On June 25, 1996, Chase filed an amendment to his motion for a new trial. On July 9, 1996, the trial court entered two orders denying each of Chase's motions.

We will now consider the issues presented for review. The first issue as stated in Chase's brief is:

1.      Did the defendants present any proof during the trial of this case that on the date of December 29, 1992 in Memphis, Tennessee, James Chase, Jr. in his wheelchair did anything different than another wheelchair user while using the defendants' handicap ramp, that is, go straight up the ramp and use the ramp as it was intended to be used?

We should first note that the issue as phrased seeks an answer that is irrelevant. It appears that the issue for review is whether the trial court erred in failing to direct a verdict for Chase on the issue of his comparative negligence. Chase asserts that there is no proof that he was comparatively negligent and that the trial court should have granted a directed verdict on this issue. He further contends that the charge to the jury on this issue was prejudicial.

When deciding a motion for directed verdict, both the trial court and the reviewing court on appeal must look to all the evidence, take the strongest legitimate view of the evidence in favor of the opponent of the motion, and allow all reasonable inferences in favor of that party. *Tennessee Farmers Mut. Ins. Co. v. Hinson*, 651 S.W.2d 235, 237 (Tenn. App. 1983). The court must discard all countervailing evidence, and if there is then any dispute as to any material fact or any doubt as to the conclusions to be drawn from the whole evidence, the motion must be denied. *Id*. at 237-38. The court may grant the motion only if, after assessing the evidence according to the foregoing standards, it determines that reasonable minds could not differ as to

4

the conclusions to be drawn from the evidence. *Sauls v. Evans*, 635 S.W.2d 377, 379 (Tenn. 1982); *Holmes v. Wilson*, 551 S.W.2d 682, 685 (Tenn. 1977). If there is any doubt as to the proper conclusions to be drawn from the evidence, the motion must be denied. *Crosslin v. Alsup*, 594 S.W.2d 379, 380 (Tenn. 1980).

The modified form of comparative negligence adopted in *McIntyre v. Balentine*, 833 S.W.2d 52 (Tenn. 1992), requires that the plaintiff's negligence remain less than the defendant's negligence in order to allow a recovery. *Id.* at 57. In *Eaton v. McLain*, 891 S.W.2d 587 (Tenn. 1994), the Supreme Court set forth a general set of guidelines to assist trial courts and juries in their duties of apportioning fault:

> In summary, the percentage of fault assigned to each party should be dependent upon all the circumstances of the case, including such factors as: (1) the relative closeness of the causal relationship between the conduct of the defendant and the injury to the plaintiff; (2) the reasonableness of the party's conduct in confronting a risk, such as whether the party knew of the risk, or should have known of it; (3) the extent to which the defendant failed to reasonably utilize an existing opportunity to avoid the injury to the plaintiff; (4) the existence of a sudden emergency requiring a hasty decision; (5) the significance of what the party was attempting to accomplish by the conduct, such as an attempt to save another's life; and (6) the party's particular capacities, such as age, maturity, training, education, and so forth.
>
> We do not wish to imply from our enumeration of these factors that they constitute an exclusive list for the purpose of apportioning fault between the negligent parties. As stated above, the fault apportionment question is ultimately dependent upon all the circumstances of the case; and juries will continue, as they have in the past, to rely upon their common sense and ordinary experience in apportioning fault. Nor do we wish to imply that these factors will not need to be revised or expanded at some future date as we are presented with specific factual situations. We have only attempted in this opinion to give general guidance to the bench and bar; and any unresolved questions with respect to the factors must wait for another day. Again, while we realize that all these factors will not be applicable to every case, we believe that this approach is superior to leaving trial courts and juries completely without standards in this process. Therefore, we hold that the trial court should take the factors into consideration, if applicable, in ruling on a motion for directed verdict or JNOV which alleges negligence on the part of the plaintiff. The trial court should also include the factors, if applicable, in its instructions to the jury on the fault apportionment question.

*Id.* 592-93 (footnotes omitted).

In this case, Chase testified that he used his crutches on his two previous visits to Physiotherapy Associates and did not notice the ramp. He stated that he used the ramp on

December 29, 1992 because Physiotherapy Associates told him to do so and that the ramp on which he fell was the only handicap ramp at Executive Square. He further testified that he observed the ramp for the first time on December 29, 1992 and then only a very short period of time, just under a minute, before he began his ascent. Chase testified at trial that his wheelchair rolled straight up the ramp and that he fell straight backwards.

Even though Chase observed the ramp only for a brief period of time, he admitted that in that period of time he "observed that it was an awful steep ramp." In addition, although Chase testified that he rolled straight up the ramp and flipped straight backwards, there is testimony in the record that he was found lying on his side and that the right side of his clothes was dirty from falling on concrete. This is evidence from which reasonable minds could differ as to whether Chase ascended the ramp directly in the middle, as he testified, or more to one side. Moreover, under Chase's theory in this case, the obviousness of the condition of the handicap ramp presents at the very least a factual question as to what degree he was negligent in encountering a known risk.

Taking the strongest legitimate view of the evidence and allowing all reasonable inferences in favor of the defendants, the evidence introduced presents a factual issue as to whether the plaintiff, Chase, was comparatively negligent. Therefore, the trial court property denied Chase's motion for a directed verdict and submitted the issue of comparative fault to the jury. This argument is without merit.

Chase also contends that Tennessee law gives this Court the right to alter the jury's findings when those findings are clearly erroneous. This Court does not reweigh the evidence or reevaluate the witnesses' credibility in an appeal from a jury verdict. *Witter v. Nesbit*, 878 S.W.2d 116, 121 (Tenn. App. 1993), *appeal denied*, (Tenn. 1994), *cert. denied*, 513 U.S. 873, 115 S. Ct. 199, 130 L. Ed. 2d 130 (1994). On appeal, this Court is required to take the strongest legitimate view of the evidence favoring the prevailing party, discard all contrary evidence, allow all reasonable inferences to uphold the jury's verdict, and set aside the jury's verdict only when there is no material evidence to support the verdict. T.R.A.P. 13(d); *Witter*, 878 S.W.2d at 121.

From our review of the record, there is material evidence to support the jury's finding that the defendants were 50% at fault and that Chase was 50% at fault. Therefore, we find the first issue to be without merit.

6

Under ***McIntyre***, a plaintiff who is found to be 50% or more at fault is barred from recovery. 833 S.W.2d at 57. Accordingly, all issues relating to damages are pretermitted. In addition, the issue raised by the defendants disputing the evidence of the steepness of the ramp is also pretermitted. We will now consider the remaining issues raised in this appeal.

2.      Did the learned Trial Judge provide complete and adequate jury instructions?

Chase contends that the trial judge gave incomplete and inadequate jury instructions on the issue of negligence per se. He asserts that the steepness of the ramp is a violation of the building code and that this violation constituted negligence per se.

The defendants contend that there is no negligence per se because no provision of the building code imposes a duty on purchasers of property to make improvements to bring the property up to current code requirements.

The doctrine of negligence per se is firmly established in our case law. In order to recover on the basis of negligence per se, three elements must be established. First, it must be shown that the defendant violated a statute or ordinance that imposes a duty or prohibits an act for the benefit of a person or the public. ***Queen v. Dayton Coal & Iron Co.***, 95 Tenn. 458, 462, 32 S.W. 460 (1895); ***Memphis Street Railway v. Haynes***, 112 Tenn. 712, 722, 81 S.W. 374 (1904). Second, the proof must show that the injured party was within the class of persons whom the legislative body intended to benefit and protect by the enactment of that particular statute or ordinance. ***Traylor v. Coburn***, 597 S.W.2d 319, 322 (Tenn. App. 1980) (citing ***Carter v. Redmond***, 142 Tenn. 258, 218 S.W. 217 (1920)). In addition to establishing negligence per se by showing these two elements, the plaintiff must of course show that such negligence was the proximate cause of the injury. ***Brookins v. The Round Table, Inc.***, 624 S.W.2d 547, 550 (Tenn. 1981); ***Alex v. Armstrong***, 215 Tenn. 276, 283, 385 S.W.2d 110, 114 (1964).

Chase relies on ***Smith v. Owen***, 841 S.W.2d 828 (Tenn. App. 1992), in which the defendant's liability was predicated on negligence per se because the building code adopted by the City of Cookeville expressly prohibited the renting of a dwelling for living purposes without a prior inspection to ascertain that its condition met certain standards specified in that code. ***Id.*** at 829-30. In addition, the proof showed that defendant did in fact rent the premises in which the plaintiff's child sustained injuries without making such inspection and that an inspection would have revealed the defect that caused the injury. ***Id.*** at 829. In so holding, the ***Smith*** Court

7

found that the defendant, who had no actual knowledge of the condition that caused the injury, was put on constructive notice of her duty by virtue of the provisions in the Cookeville building code. *Id.* at 831.

In the instant case, the complaint does not set forth a provision similar to the provision in *Smith.* However, Chase asserts that his February 9, 1996 motion to amend the complaint was to supply the pertinent provisions of the building code and that the trial court erred in denying his proposed amendment.

Rule 15 of the Tennessee Rules of Civil Procedure provides in relevant part:

> A party may amend the party's pleadings once as a matter of course at any time before a responsive pleading is served . . . the party may so amend it at any time within fifteen (15) days after [the pleading] is served. Otherwise a party may amend the party's pleadings only by written consent of the adverse party or by leave of court; and leave shall be freely given when justice so requires.

Tenn. R. Civ. P. 15.01. After a responsive pleading has been served, the denial of a motion to amend the pleadings lies within the sound discretion of the trial court and will not be reversed absent a showing of an abuse of that discretion. *Hall v. Shelby County Retirement Bd.*, 922 S.W.2d 543, 546 (Tenn. App. 1995)(citing *Merriman v. Smith*, 599 S.W.2d 548, 559 (Tenn. App. 1979); *Welch v. Thuan*, 882 S.W.2d 792, 793 (Tenn. App. 1994)). There are several considerations a trial judge should evaluate in determining whether to grant or deny a motion to amend. *Id.* Among these factors are an undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment. *Id.* (citing *Merriman*, 599 S.W.2d at 559).

In light of the factors delineated above, there is justification for the trial court's denial of Chase's motion to amend. He had previously amended his complaint, and this motion to amend came well into the trial of the case. All of the provisions of the building code were available to Chase at the time he filed his original complaint. The motion was untimely and could unduly prejudice the defendants.

The trial court did not abuse its discretion in denying Chase's motion to amend, nor did the trial court err in refusing Chase's special request for instructions. Moreover, we have heretofore noted that there was material evidence to support the jury's finding of 50%

8

comparative fault on the part of the plaintiff, thus, any error by the trial court in refusing the amendment and the requested jury instructions would be harmless error. T.R.A.P. 36(b).

The next issue to be considered is phrased by Chase as:

3. Did the learned trial judge commit reversible evidentiary rulings allowing improper questions to be asked of Barbara Chase, the wife of plaintiff/appellant, by defense counsel?

Apparently, this issue is predicated on the following trial proceedings relating to a letter written by Chase's treating physician, Dr. O'Sullivan:

Q: (By Mr. Leach) What he put in this letter is incorrect?

Mr. Gaerig: Objection, if your Honor please. It calls for a conclusion of one witness as to what another witness has said.

The Court: All right. Objection overruled.

Q: (By Mr. Leach) Do you remember the question?

A: No.

Q: The question is this statement that Dr. O'Sullivan put in this letter of December 4, 1992 that you told me you and your husband requested him to write where he put in there, he can no longer propel himself in a normal wheelchair, is that true or untrue or was it true or untrue as of December 4, 1992?

A: Jim could propel himself in a wheelchair.

Q: So that was untrue?

A: For short distances.

\*       \*       \*

Q: Well, let me ask you again then. Is he telling the truth here when he says that Mr. Chase could no longer propel himself in a normal wheelchair?

Mr. Gaerig: Your Honor --

The Court: Just a minute, please, sir -- I mean please, ma'am. Yes, sir.

Mr. Gaerig: Objection. She can't testify what a doctor was saying. She cannot make a comment on --

The Court: Just a minute now. Again, I'm not going to argue with you, Mr. Gaerig. You make an objection, and I'll rule on it.

Mr. Gaerig: My objection is --

9

The Court:    I know what your objection is, and I overrule it.

Mr. Gaerig:    That's fine.

A:    I don't know why Dr. O'Sullivan stated it in those words, but I know that Jim could get himself in a wheelchair a short distance.

*        *        *

The above record does not reflect error on the part of the trial court, but in any event, we do not see how this testimony affected the jury's verdict or resulted in prejudice to the judicial process. T.R.A.P. 36(b). This issue is without merit.

4.    Did the learned Trial Judge commit reversible error in fifteen rulings sustaining general objections contrary to the Tennessee Rules of Evidence, Rule 103(a)(1)?

Finally, Chase asserts that the trial judge erred in sustaining fifteen of the defendants' counsel's general objections.[2] The defendants, on the other hand, contend that the nature of the objections was obvious from their context.

The Tennessee Rules of Evidence provide as follows:

> **Rule 103.  Rulings on evidence.** — (a) Effect of Erroneous Ruling. — Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
> (1) Objection. — In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection if the specific ground was not apparent from the context; or
> (2) Offer of Proof. — In case the ruling is one excluding evidence, the substance of the evidence and the specific evidentiary basis supporting admission were made known to the court by offer or were apparent from the context.

Tenn. R. Evid. 103.

The record reveals that Chase did not make offers of proof of any kind on the majority of the objections that he asserts the trial court erred in sustaining, nor did he show "the specific evidentiary basis supporting admission" of the excluded evidence. Tenn. R. Evid. 103(a)(2). Thus, we have no way of knowing whether the evidence was improperly excluded. In the absence of an offer of proof and the inclusion of the testimony in the record, this Court cannot consider the alleged errors. *Davis v. Hall*, 920 S.W.2d 213, 218 (Tenn. App. 1995)(citing *Brown v. Weik*, 725 S.W.2d 938, 948 (Tenn. App. 1983); *Valentine v. Conchemco, Inc.*, 588

---

[2] In his brief, Chase asserts that the trial court sustained fifteen of the defendants' counsel's general objections. Chase then proceeds to list not fifteen, but nineteen, alleged examples of such error.

S.W.2d 871, 876 (Tenn. App. 1979)).

We also note that some of the objections relate to the issue of damages and that, consequently, these arguments have been pretermitted. As to the remaining objections with which Chase takes issue, we find that in several instances the defendants' counsel objected during a deposition and gave specific reasons for the objection, so as to preserve his objection for the record. In other instances the nature of the objection was plainly obvious from the context in which the objection was made. In fact, the trial court specifically stated that in the absence of a specific objection, the court would presume the nature of an objection to be as to the relevancy of the matter. In any event, Chase has not set forth that the alleged errors involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process. T.R.A.P. 36(b). This issue is without merit.

Accordingly, the judgment of the trial court is affirmed. Costs of appeal are assessed against the appellant.

_____
**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**

_____
**ALAN E. HIGHERS, JUDGE**

_____
**DAVID R. FARMER, JUDGE**

11