# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
January 24, 2012 Session

## JOHN MARK WATKINS, SURVIVING SPOUSE OF AMY ROSE WATKINS v. AFFILIATED INTERNISTS, P.C., ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 05C2787      Barbara N. Haynes, Judge**

---

**No. M2011-00541-COA-R3-CV - Filed September 17, 2012**

---

Husband of a decedent filed a wrongful death medical malpractice action against the decedent's physician and sought to amend his complaint to add a count for negligence *per se* based on the physician's failure to review his physician assistant's narcotics prescription. The trial court denied Husband the opportunity to amend his complaint and dismissed the action on summary judgment. On appeal, the Court of Appeals concluded the trial court erred in denying Husband's motion to amend but affirmed the trial court's other rulings. On remand, the trial court allowed Husband to amend his complaint to add a count for negligence *per se*, but the court then granted the physician's motion for summary judgment on the issue of causation. Between the first Court of Appeals decision and this appeal, the Tennessee Supreme Court decided *Estate of French v. Stratford House*, 333 S.W.3d 546 (Tenn. 2011), in which it held that negligence *per se* claims cannot be maintained when medical malpractice is alleged. The *Estate of French* holding bars Husband's negligence *per se* claim against the physician. We therefore affirm the trial court's judgment granting the physician summary judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

David Randolph Smith, Richard A. Demonbreun, Nashville, Tennessee, for the appellant, John Mark Watkins, Surviving Spouse of Amy Rose Watkins.

Dixie W. Cooper, Brian D. Cummings, and James Charles Sperring, Nashville, Tennessee, for the appellees, Affiliated Internists, P.C. and Travis K. Pardue, M.D.

## OPINION

This is a medical malpractice case in which the trial court granted the defendants' motion for summary judgment and dismissed the plaintiff's complaint. In this appeal we consider the application of *Estate of French v. Stratford House*, 333 S.W.3d 546 (Tenn. 2011), to a medical malpractice case where negligence *per se* has also been plead.

## I. BACKGROUND

Amy Rose Watkins was twenty-seven years old when she died from acute drug intoxication caused by prescription drugs. She was recovering from a surgical procedure when she developed an infection. Travis K. Pardue, M.D., was working with a group of internists known as Affiliated Internists, P.C., and he was Ms. Watkins' primary care physician at that time. On February 18, 2003, Ms. Watkins went to see Dr. Pardue at his office in Hermitage for the treatment of pain she was suffering as a result of the infection. Dr. Pardue's physician assistant saw Ms. Watkins when she came in and gave her a three-week prescription for Demerol, to be taken four times a day, along with Stadol. After about two weeks Ms. Watkins called Dr. Pardue's office complaining of nausea, vomiting, and dehydration. Ms. Watkins was directed to go to the emergency room if she felt dehydrated, but Ms. Watkins did not go to the emergency room at that time. Ms. Watkins died later that day, and an autopsy revealed that she died of acute combined drug intoxication as a result of the prescription drugs she was taking.

Ms. Watkins' husband, John Mark Watkins, filed a wrongful death medical malpractice suit against Dr. Pardue and Affiliated Internists, P.C. (collectively, "Dr. Pardue"), in September 2005. Mr. Watkins moved to amend the complaint in July 2007 to add a claim for negligence *per se* after Dr. Pardue was censured by the Tennessee Department of Health for failing to comply with medical regulations requiring physicians to review a physician assistant's prescription of controlled medicines within ten days. The trial court denied Mr. Watkins' motion to amend, finding that the regulations did not establish a standard of care. The trial court then scheduled the case for trial on September 17, 2007, on the medical malpractice claim alone.

## II. TRIAL COURT PROCEEDINGS

On September 14, 2007, the trial court heard oral argument on the parties' motions *in limine* and granted Dr. Pardue's motion to exclude the testimony of Mr. Watkins' expert Dr. Jirjis with respect to both the standard of care for physician assistants and the standard

of care for a physician supervising physician assistants. The court reserved ruling on Dr. Pardue's motion to exclude the testimony of another of Mr. Watkins' experts, Dr. Mulder, until trial.

Once the trial was underway, the trial court ruled Dr. Mulder was not competent to testify because he could not satisfy the "locality rule" set forth in Tenn. Code Ann. § 29-26-115(a)(1).[1] In addition, the trial court did not allow Dr. Mulder to testify about the standard of care applicable to Dr. Pardue, separate from his role as a supervising physician, because Mr. Watkins' Rule 26 Notice did not disclose any anticipated testimony by Dr. Mulder about the proper standard of care for Dr. Pardue other than in his role as a physician supervising physician assistants.

The trial court ultimately declared a mistrial because Mr. Watkins' attorney attempted to elicit standard of care testimony from Dr. Mulder despite the court's earlier rulings that Dr. Mulder was not qualified to testify with regard to the proper standard of care for Dr. Pardue. Dr. Pardue then moved for summary judgment in March 2008, arguing that Mr. Watkins had failed to produce competent expert testimony on the issue of causation. The court granted Dr. Pardue's motion and dismissed Mr. Watkins' complaint.

### III. FIRST APPEAL TO COURT OF APPEALS

Mr. Watkins appealed the trial court's grant of summary judgment, its rulings barring the expert testimony of Drs. Jirjis and Mulder, and its denial of his motion to amend his complaint to add a claim for negligence *per se*. In its decision in *Watkins v. Affiliated Internists, P.C.*, 2009 WL 5173716 (Tenn. Ct. App. Dec. 29, 2009), the Court of Appeals upheld all of the trial court's rulings except for the denial of Mr. Watkins' motion to amend his complaint to add a count for negligence *per se.*

The Court of Appeals held that Mr. Watkins should be able to pursue his negligence *per se* claim against Dr. Pardue and concluded the regulation at issue did indeed contain a standard of care to establish whether Dr. Pardue was negligent as a physician supervising his physician assistant. *Id*. at *27-28. The Court of Appeals wrote:

---

[1]The trial court made this ruling in 2007, before the Tennessee Supreme Court issued its decision in *Shipley v. Williams*, 350 S.W.3d 527 (2011). In *Shipley* the Court clarified the expert testimony standards in a medical malpractice case under Tenn. Code Ann. § 29-26-115. In discussing the statute, the Court explained: "Subsections (a) and (b) serve two distinct purposes. Subsection (a) provides the elements that must be proven in a medical negligence action and subsection (b) prescribes who is competent to testify to satisfy the requirements of subsection (a). Therefore, when determining whether a witness is competent to testify, the court should look to subsection (b), not subsection (a)." *Id.* at 550.

[T]he Plaintiff must still prove that Dr. Pardue's violation of the regulation was the proximate cause of the Decedent's death. This requires proof that, had

> Dr. Pardue timely conducted an independent personal review of the Decedent's data and chart, actions would have been taken that would have prevented the Decedent's death. As the negligence *per se* claim was not before the trial court when it ruled on the Plaintiff's proffered causation testimony, and the standard of care testimony on all of the remaining claims has been excluded, we find that it would be inappropriate at this juncture for us to review the trial court's causation rulings. We hold only that, on remand, the Plaintiff may amend his complaint to assert a claim of negligence *per se* based on the violation of Tenn. Comp. R. & Regs. 0880-2-.18(7), and that he may have the opportunity to establish the elements of this claim.

*Id.* at *28 (internal citations omitted).

## IV. TRIAL COURT PROCEEDINGS ON REMAND

The case was thus remanded to the trial court. Dr. Pardue filed a motion for summary judgment on June 16, 2010, with regard to the one remaining claim, negligence *per se*. Dr. Pardue submitted an affidavit in support of his motion stating he would not have done anything differently even if he had reviewed Ms. Watkins' chart within ten days of the time his physician assistant prescribed the Demerol for Ms. Watkins. Dr. Pardue argued Mr. Watkins could not establish the cause in fact element necessary to succeed on his negligence *per se* claim because the Court of Appeals had affirmed the trial court's rulings excluding the standard of care testimony proffered by Mr. Watkins' experts.

Mr. Watkins filed a motion to amend his complaint to add a count for negligence *per se* in accordance with the Court of Appeals' decision. Mr. Watkins filed a memorandum in opposition to Dr. Pardue's motion for summary judgment arguing, *inter alia*, that he could prove causation with regard to his negligence *per se* claim with the use of a new affidavit by Dr. Joseph James along with a different affidavit from Dr. Jirjis.[2]

---

[2]The affidavit by Dr. James stated that prescription of Demerol as written by the P.A. caused Ms. Watkins' death by acute intoxication in combination with other drugs and that "had the Demerol prescription been stopped by March 4th (14 days later) it is more likely than not that Ms. Watkins would not have died." He further opined that a reasonably prudent internal medicine physician using a physician assistant was required by the applicable standard of care and TENN. COMP. R. & REGS: 0880-2-.18(7) to review this Demerol prescription within ten business days: "Further, had this prescription been reviewed in this case

(continued...)

Dr. Pardue did not file a reply to Mr. Watkins' memorandum opposing Dr. Pardue's motion for summary judgment, nor did Dr. Pardue file a motion to strike either Dr. James' affidavit or Dr. Jirjis' second affidavit. During the hearing before the trial court, however, Dr. Pardue argued that Dr. James' affidavit was inadmissible because the Scheduling Order in effect from before the case was first appealed to the Court of Appeals required expert witnesses to be disclosed by January 31, 2007. Dr. Pardue argued that because Mr. Watkins did not move the trial court for permission to amend the disclosure deadline pursuant to Tenn. R. Civ. P. 6.02, Dr. James' affidavit regarding the standard of care applicable to Dr. Pardue was inadmissible.

Consistent with the Court of Appeals' opinion and remand, the trial court granted Mr. Watkins' motion to amend his complaint to add a claim for negligence *per se*. Then, following a hearing on Dr. Pardue's motion for summary judgment, the court issued an Order granting Dr. Pardue summary judgment. The court held that Mr. Watkins failed to create a genuine issue of material fact on the essential causation element of the negligence *per se* claim. Specifically, the Court found that Mr. Watkins could not offer any admissible evidence that Dr. Pardue was required to do anything that was not done had he reviewed Ms. Watkins' chart within 10 days of the relevant Demerol prescription being written by his physician assistant.

The court found that Dr. Pardue had negated the cause in fact element of the negligence *per se* claim by testifying in his affidavit that there is no action he would have taken if he had reviewed Ms. Watkins' chart within 10 days of the relevant prescription. The court further found that the affidavit of Mr. Watkins' expert was inadmissible because it was filed after the deadline for disclosing witnesses and Mr. Watkins had not moved for leave to disclose Dr. James and his opinion after the deadline. Consequently, according to the trial court, Mr. Watkins did not create a genuine issue of material fact on the causation issue.

Mr. Watkins filed a motion to alter or amend the Order granting Dr. Pardue summary

---

[2](...continued)

within ten business days, it is my opinion that a reasonably prudent internal medicine physician using a physician assistant and acting within the applicable standard of care would have stopped the prescription because this large dosage of Demerol should not have been prescribed to a patient such as Amy Watkins with a history of actual or suspected seizure disorders and should not have been prescribed simultaneously with Stadol as was done in this case by Natasha Worthington."

The second affidavit by Dr. Jirjis also addressed the issue of causation, stating, "Assuming that the March 5th Demerol prescription had been reviewed within ten business days and the prescriptions had been stopped after physician review, it is my opinion that Mrs. Watkins' acute drug intoxication which caused her death would, more likely than not, have been averted."

judgment, arguing that Dr. James' affidavit was admissible and created material questions of fact, precluding summary judgment. Following a hearing, the trial court denied the motion.

## V. THE CURRENT APPEAL

Mr. Watkins has appealed the trial court's rulings to this Court. Of course, he challenges the trial court's ruling on the admissibility of Dr. James' affidavit and, consequently, the grant of summary judgment. However, the determinative question in this case is the issue raised by Dr. Pardue.

Dr. Pardue argues that regardless of any other issue in this case, Mr. Watkins cannot proceed on his negligence *per se* claim because the Tennessee Supreme Court declared in *Estate of French v. Stratford House*, 333 S.W.3d 546, 561 (Tenn. 2011), that "a negligence *per se* claim cannot co-exist with a medical malpractice claim." The Supreme Court issued its *Estate of French* opinion after the Court of Appeals ruled Mr. Watkins should be permitted to proceed on his negligence *per se* claim, and regardless of any errors the trial court may have made on remand, Dr. Pardue contends the *Estate of French* holding precludes Mr. Watkins from proceeding with his negligence *per se* claim.

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Martin v. Norfolk Southern Railway Co.*, 271 S.W.3d 76, 84 (Tenn. 2008); *Blair v. West Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004). We review the summary judgment decision as a question of law. *Id.* Accordingly, this court must review the record *de novo* and make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been met. *Eadie v. Complete Co., Inc.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair v. West Town Mall*, 130 S.W.3d at 763. Those requirements are that the filings supporting the motion show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Blair*, 130 S.W.3d at 764.

In the case before us, the question is whether, as a matter of law, Mr. Watkins can maintain his negligence *per se* claim in light of the Tennessee Supreme Court's intervening decision in *Estate of French*. Because there is no factual component to this decision, the burden-shifting analysis regarding the creation of disputes of fact in summary judgment proceedings does not apply.

## VI. MEDICAL MALPRACTICE AND NEGLIGENCE *PER SE*

Tennessee Code Annotated § 29–26–115(a), sets forth the elements of proof in a

medical malpractice action:

> (1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred;
>
> (2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and
> (3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred. *Shipley v. Williams*, 350 S.W.3d 527, 550 (Tenn.2011). These three elements must be proved by the testimony of a qualified expert.

Tenn. Code Ann. § 29–26–115; *Williams v. Baptist Mem'l Hosp.*, 193 S.W.3d 545, 553 (Tenn.2006).

In contrast, negligence *per se* requires a plaintiff to prove the defendant (1) violated a statute, ordinance, or regulation that requires or prohibits a particular act for the benefit of the plaintiff or the general public, (2) that the injured person was within the class of individuals the legislature intended to benefit and protect by enacting the statute, ordinance, or regulation, and (3) that the defendant's negligence was the proximate cause of the injured party's injury. *Smith v. Owen*, 841 S.W.2d 828, 831 (Tenn. Ct. App. 1992); *Holt v. City of Memphis*, 2001 WL 846081, at *5 (Tenn. Ct. App. July 20, 2001).

> The standard of conduct expected of a reasonable person may be prescribed in a statute, and, consequently, a violation of the statute may be deemed to be negligence *per se*. When a statute provides that under certain circumstances particular acts shall or shall not be done, it may be interpreted as fixing a standard of care . . . from which it is negligence to deviate.

*Estate of French,* 333 S.W.3d at 560 (quoting *Cook ex rel. Uithoven v. Spinnaker's of Rivergate*, 878 S.W.2d 934, 937 (Tenn. 1994)). The negligence *per se* doctrine applies not only to violations of statutes, but also to violations of regulations and ordinances so long as the statute/regulation/ordinance was designed to impose a duty or prohibit an act for the benefit of a person or the public and the injured party was within the class of individuals the statute was meant to protect. *Estate of French*, 333 S.W.3d at 560-61.

Thus, while both medical malpractice and negligence *per se* require proof of a standard of care applicable to the defendant, they differ as to how that standard is to be

established. It is that difference that is the basis for the Tennessee Supreme Court's holding in *Estate of French* that a medical malpractice claim cannot be based on negligence *per se.*

The *Estate of French* Court explained that declaring conduct negligent *per se* means that the conduct is negligent as a matter of law, thus relieving plaintiffs from having to prove the standard of care from which the defendant allegedly deviated. *Id.* at 561. The Court reasoned that relying on federal and state regulations to prove a standard of care where medical malpractice is alleged would be inconsistent with the TMMA's requirement that the plaintiff prove the defendant violated "[t]he recognized standard of acceptable professional practice in the profession . . . that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred." *Id.*; Tenn. Code Ann. § 29-26-115(a)(1).

> In order to prove a violation of the TMMA, a plaintiff must show that his or her injuries resulted because the defendant failed to act with ordinary and reasonable care when compared to the customs or practices of physicians from a particular geographic region. In consequence, the locality rule, which the legislature intended to apply to private causes of action for medical malpractice, precludes plaintiffs from proceeding on a negligence *per se* theory based upon alleged violations of nursing home regulations.

*Estate of French*, 333 S.W.3d at 562 (quoting *Sutphin v. Platt*, 720 S.W.2d 455, 457 (Tenn. 1986) and *Conley v. Life Care Ctrs. of Am.*, 236 S.W.3d 713, 734 (Tenn. Ct. App. 2007)).

Accordingly, the Court held that a plaintiff cannot use a violation of federal or state regulations to prove a deviation from the standard of care as a component of a medical malpractice claim. *Estate of French*, 333. S. W.3d at 561.

In the case before us, Mr. Watkins alleges that Dr. Pardue breached the standard of care applicable to him in his supervision of physician assistants because he violated a state regulation governing such supervision by doctors. This is clearly an attempt to establish the relevant standard of care in a medical malpractice claim by using the regulation. Where a defendant is charged with negligence based on acts or omissions involving a matter of medical art or science requiring specialized skills not ordinarily possessed by lay persons, the negligence is properly classified as medical malpractice. In such cases, plaintiff cannot bring a negligence *per se* claim.

Mr. Watkins cannot sustain his negligence *per se* claim where the conduct complained of involves medical treatment decisions.

Mr. Watkins does not dispute that the negligence he alleges Dr. Pardue committed is based on acts or omissions involving a matter of medical art or science requiring specialized skills not ordinarily possessed by lay persons. In fact, Mr. Watkins acknowledges that the *Estate of French* opinion "directly contradicts and effectively overruled" this Court's December 2009 opinion set forth in *Watkins v. Affiliated Internists, P.C.*, 2009 WL 5173716 (Tenn. Ct. App. Dec. 29, 2009). Mr. Watkins contends, however, that he should not be bound by the *Estate of French* holding because (1) the procedural posture of his case precludes retroactive application of *Estate of French*; and (2) even if the holding in *Estate of French* applies to his case, Mr. Watkins presented a *prima facie* medical malpractice case by submitting competent expert affidavit proof as required by the TMMA's locality rule.

As a general rule, judicial decisions are applied retroactively. *Watson's Carpet and Floor Coverings v. McCormick*, 247 S.W.3d 169, 181 (Tenn. Ct. App. 2007). As the Tennessee Supreme Court has explained:

> In civil cases, judicial decisions overruling prior cases generally are given retrospective effect. *See, e.g., Perez v. McConkey*, 872 S.W.2d 897, 906 (Tenn.1994) (applying abolition of assumption of the risk doctrine retroactively); *Cook ex rel. Uithoven v. Spinnaker's of Rivergate, Inc.*, 846 S.W.2d 810, 812 (Tenn.1993) (further describing proper retroactive application of *McIntyre*); *McIntyre v. Balentine*, 833 S.W.2d 52, 58 (Tenn.1992) (applying comparative fault doctrine retroactively). Retrospective effect will be "denied only if such an application would work a hardship upon those who have justifiably relied upon the old precedent." *Marshall v. Marshall*, 670 S.W.2d 213, 215 (Tenn. 1984); *see generally*, S. R. Shapiro, *Annotation, Prospective or Retroactive Operation of Overruling Decision*, 10 A.L.R.3d 1371 (1966).

*Hill v. City of Germantown*, 31 S.W.3d 234, 239 (Tenn. 2000). Other rules apply where the judicial decision at issue overrules a prior judicial construction of a statute, *id*. at 239–40, but the case before us does not involve a statute or its interpretation by the courts.

As the Court noted in *Marshall v. Marshall*, *supra*, "prospective only" application of an overruling decision should be limited to a case where hardship on a party who has relied on the old rule outweighs the hardship on the party denied the benefit of the new rule, and

> Since there are few cases where such rigorous demonstrations can be made, there should be few occasions when prospective overruling can justifiably

replace the normal retroactive application of the overruling decision.

*Marshall*, 670 S.W.2d at 215 (quoting Traynor, *Quo Vadis Prospective Overruling: A Question of Judicial Responsibility*, 28 Hastings L.J. 533, 561–62 (1977)).

Mr. Watkins argues he relied on the negligence *per se* theory in pursuing his case upon remand to the trial court and that he would suffer an undue hardship if the holding in *Estate of French* were to be applied retroactively to bar his negligence *per se* claim at this point in the litigation. He relies on language in *Calaway ex rel. Calaway v. Schucker*, 193 S.W.3d 509 (Tenn. 2005), which is similar to that in other cases, and states:

> In civil cases retrospective application of a decision overruling an earlier decision ordinarily is denied only if such an application would work a hardship upon those who have justifiably relied upon the old precedent.

*Id*. at 518. In *Calaway*, the Court then held that "to avoid undue hardship to potential plaintiffs who have relied upon the *Bowers* rule, the new rule we announce today is to have prospective application only." *Id.* The Court made no such statement regarding the negligence *per se* holdings in *Estate of French*.

As set out above, the Tennessee Supreme Court has stated that there are few cases where the necessary "rigorous demonstrations" of hardship can be made, and there are few situations that justify departure from the normal retroactive application of a decision. *Marshall*, 670 S.W.2d at 215. Mr. Watkins' situation is not one of them.

In any event, the negligence *per se* holding in *Estate of French* did not overrule prior decisions and was not a departure from earlier holdings. In *Conley v. Life Care Ctrs. of Am.*, 236 S.W.3d 713 (Tenn. Ct. App. 2007), this court considered, *inter alia*, whether a negligence *per se* cause of action based on the alleged violation of federal nursing home regulations could be maintained against a nursing home where the plaintiff alleged a psychotic patient with a history of unprovoked attacks on others should not have been admitted to the nursing home. *Id*. at 719-22.

The nursing home argued the federal regulations were too vague and general to be enforceable as standards of care and that the federal regulations would impermissibly constitute a national standard of care if the plaintiff were permitted to proceed with her negligence *per se* cause of action. *Id*. at 733. The Court of Appeals agreed with the nursing home's argument, writing that the federal regulations were too vague and general to

constitute a standard of care by which the acts or omissions of health care providers and nursing home operators could be judged effectively. *Id.* The court explained:

> Plaintiff's claims that are based upon alleged violations of federal regulatory standards constitute a national standard of care that runs afoul with the [T]MMA. . . . By statute, Tennessee courts must apply the so-called "locality rule" in medical malpractice actions. Pursuant to that rule, a plaintiff must show that the defendant failed to act with ordinary and reasonable care when compared to the customs or practices of physicians from a particular geographic region. . . . The statutory scheme does not permit a plaintiff in a medical malpractice action to rely on a so-called national standard of care to establish a violation of acceptable professional practices in a medical community in Tennessee.

*Id.* at 733-34 (citations and quotations omitted). Thus, the *Conley* court held, a plaintiff asserting a negligence *per se* cause of action could not rely on federal regulations setting forth a national standard of care for a medical professional because the United States of America fails to qualify as a particular geographic region. *Id.* at 734 (quoting *Sutphin*, 720 S.W.2d at 457); *accord Smartt v. NHC Healthcare/McMinnville, LLC*, 2009 WL 482475, at *14 (Tenn. Ct. App. Feb. 24, 2009) (acknowledging TMMA does not allow plaintiff in medical malpractice suit to rely on national standard of care to establish violation of acceptable professional standards in Tennessee medical community)

In *Latiff v. Dobbs*, 2008 WL 238444 (Tenn. Ct. App. Jan. 29, 2008), this court affirmed the trial court's refusal to give the jury a negligence *per se* instruction because the plaintiff was alleging medical malpractice and Tennessee Code Annotated section 29-26-115(a) and (b) require the standard of care and the breach of the standard of care to be established by expert testimony. *Id.* at *13. In *Latiff*, the appellate court relied on the holdings in *Conley* (discussed above), *Holt v. Memphis*, 2001 WL 846081 (Tenn. Ct. App. July 20, 2001) and *Brown v. Sun Healthcare Group*, 476 F. Supp.2d 848 (E.D. Tenn. 2007), and noted that in each case the court had held that the standard of care in medical malpractice cases must be established through expert testimony, consistent with the TMMA, rather than by relying on federal and/or state regulations. *Id.* at *13-14.

In the case *Brown v. Sun Healthcare Group*, *supra*, the United States District Court for the Eastern District of Tennessee dismissed a plaintiff's negligence *per se* claims that were based on a nurse's alleged violation of state and federal nursing home regulations and wrote:

> The Court finds that the decisions relating to the care of Mr. Brown required

medical knowledge, and thus fall within the purview of the TMMA. Because the acts fall under the purview of the TMMA, the plaintiff's negligence *per se* claims must fail . . . .

*Id.* at 852.

Mr. Watkins next argues he should be able to pursue his negligence *per se* claim regardless of the application of *Estate of French* to his case because the additional expert affidavit he obtained from Dr. James sets forth the standard of care Dr. Pardue was required to follow as a supervisor of physician assistants. However, in making this argument, Mr. Watkins is merely attempting to relitigate the initial medical malpractice claim that has already been dismissed, which he is precluded from doing under the law of the case doctrine. *See Memphis Pub. Co. v. Tennessee Petroleum Underground Storage Tank Bd.*, 975 S.W.2d 303, 306 (Tenn. 1998) (the "law of the case" doctrine means an appellate court's decision on an issue of law is binding in later trials and appeals of the same case if the facts on the second trial or appeal are substantially the same as the facts in the first trial or appeal).

We conclude the holding in *Estate of French* precludes Mr. Watkins from pursuing his negligence *per se* claim against Dr. Pardue and that Dr. Pardue is therefore entitled to judgment as a matter of law. We therefore affirm the trial court's judgment granting Dr. Pardue summary judgment.[3] Because of our resolution of this appeal, Mr. Watkins' other arguments are pretermitted.

## VIII. CONCLUSION

For the reasons set forth above, we hold Mr. Watkins is precluded by the Tennessee Supreme Court's decision in *Estate of French v. Stratford House*, 333 S.W.3d 546 (Tenn. 2011), from pursuing his negligence *per se* cause of action against Dr. Pardue. Costs of this appeal are assessed against the appellant, John Mark Watkins, for which execution may issue if necessary.

_____

---

[3]The Court of Appeals may affirm a judgment on different grounds than those relied on by the trial court when the trial court reached the correct result. *City of Brentwood v. Metro. Bd. of Zoning Appeals*, 149 S.W.3d 49, 60 n.18 (Tenn. Ct. App. 2004) (citing *Continental Cas. Co. v. Smith*, 720 S.W.2d 48, 50 (Tenn. 1986); *Arnold v. City of Chattanooga*, 19 S.W.3d 779, 789 (Tenn. Ct. App.1999); *Allen v. National Bank of Newport*, 839 S.W.2d 763, 765 (Tenn. Ct. App. 1992); *Clark v. Metropolitan Gov't*, 827 S.W.2d 312, 317 (Tenn. Ct. App. 1991)).

PATRICIA J. COTTRELL, JUDGE